UNITED STATES of America,
Plaintiff–Appellee,

v.

Oswald P. KRATZ, Jr., Defendant–
Appellant.

No. 98–1771.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 1999.

Decided June 3, 1999.

As Amended on Denial of Rehearing
and Suggestion for Rehearing
En Banc Aug. 11, 1999.

Thomas Edward Leggans, Office of the
United States Attorney, Criminal Division,
Fairview Heights, IL, Michael C. Carr (ar-
gued), Office of the United States Attor-
ney, Benton, IL, for Plaintiff–Appellee.

Chaka M. Patterson (argued), Bartlit,
Beck, Herman, Palenchar & Scott, Chica-
go, IL, for Defendant–Appellant.

Before CUDAHY, DIANE P. WOOD
and EVANS, Circuit Judges.

CUDAHY, Circuit Judge.

Oswald Kratz knowingly and voluntarily
waived his rights of appeal. Unhappy with
his sentence, he now offers a clever argu-
ment to expand the circumstances in which
a defendant's appellate rights survive a
knowing and voluntary waiver of those
same rights. Under the facts of this case,
we cannot accept this argument. We
therefore enforce Kratz's waiver and dis-
miss his appeal.

Armed with valid search and arrest warrants and expecting to find evidence of illegal narcotics, police officers raided Kratz's home in southern Illinois on May 24, 1996. Kratz's dog, ever-loyal and apparently unimpressed by the warrants, resisted the intrusion. The ensuing melee left the faithful dog dead and one officer injured by another's gunfire. Kratz was more cooperative than his dog and peacefully surrendered. The police read him his Miranda rights and began to take his statement. But to avoid further commotion, the police transported Kratz to the station, again recited his rights and continued the interrogation.

The interviewing officer's report chronicles Kratz's two-year binge of drug dealing in and around East St. Louis. *See* Appellant's Br. at A114. The size of Kratz's cocaine business varied. In his statement, Kratz admitted to buying "two to five ounces of cocaine every week to ten days" between about May 1995 and his arrest, and "a couple of ounces once a month to every couple of months" from June 1993 (when he was released from jail) to 1994. *Id.* at A116. During yet another period, Kratz said he bought "one to two ounces at a time ... every week to ten days." *Id.* at A117.

A grand jury returned an eight-count superseding indictment charging Kratz with various drug-related crimes. Kratz moved to suppress his statement, claiming that the officers had failed to read him his Miranda rights. He later entered into a plea agreement. By the terms of the agreement, Kratz would plead guilty to one count of conspiracy to distribute cocaine, *see* 21 U.S.C. §§ 841(a)(1) and 846, cooperate in the investigation and waive his right of appeal in exchange for the government's dropping all other counts and recommending a sentence at the low end of the sentencing range. Kratz reserved the right to challenge the admission of his statement. His written plea agreement provided in pertinent part:

2. The Government and Defendant agree that the government's recommendation with respect to the defendant's sentence depends upon the Court's resolution of the defendant's motion to suppress his statement. If the Court declines to suppress the defendant's statement, then it appears that under the Sentencing Guidelines, after all factors have been considered, Defendant will have an Offense Level of 29 and a Criminal History Category of II, where the sentencing range is 97–121 months. Because of the applicable statutory minimum sentence, the defendant's effective sentencing range is 120–121 months. If the Court suppresses the defendant's statements, then it appears that under the Sentencing Guidelines, after all factors have been considered, Defendant will have an offense level of 25 and a Criminal History Category of II, where the sentencing range is 63–78 months. The Government and Defendant also agree that these provisions are not binding on the Court, that the Court may disregard any and all recommendations the government may make, and that the Court ultimately will determine the guideline range after receiving the Presentence Report and giving both parties the opportunity to comment thereon....

3. Defendant and the Government agree that the government's recommendation with respect to the quantity of cocaine constituting this Defendant's relevant conduct depends upon the Court's resolution of the defendant's motion to suppress his statement. If the Court declines to suppress the defendant's statement, then the government will recommend that the defendant's relevant conduct is more than 5 kilograms but less than 15 kilograms of cocaine. If the Court suppresses the defendant's statement, the government will recommend that the defendant's relevant conduct is more than 2.0 but less than 3.5 kilograms of cocaine. The government and the defendant recognize that the court may, despite the government's recommendation to the contrary, resolve the suppression issue in the defendant's fa-

vor and nevertheless consider the defendant's statement in fixing his relevant conduct.

Appellant's Br. at A63–A64. The district court accepted the plea on April 17, 1997, *see id.* at A97–A111, referred Kratz to the probation office for a presentence investigation and set the matter for sentencing.

As is customary, the probation office filed a presentence report (PSR) with the court and provided Kratz with a copy. The PSR initially paraphrased the terms of the plea agreement. Next, using the two-to-five-ounces-every-week-to-ten-day numbers for the entire period between Kratz's 1993 release from prison and his 1996 arrest, the PSR calculated that Kratz had purchased, cut and resold 6.37 kilograms of cocaine. It therefore concluded that, according to his own statement to the police, Kratz's "relevant conduct is at least five kilograms but less than 15 kilograms of cocaine." In his response to the PSR, Kratz simply referred to his pending motion to suppress and the terms of the plea agreement.

On March 13, 1998, the district court held a combination suppression/sentencing hearing. Following the testimony of nine witnesses, the court denied Kratz's motion to suppress his statement. *See* Appellant's Br. at A16. Sentencing followed, and the court quickly moved to consideration of the critical relevant conduct matter. "Is there, based on the Court's ruling now and the motion to suppress and the plea agreement and stipulation of facts of the parties, an agreement that the defendant's relevant conduct and the amount of controlled substance reasonably foreseeable to him was between 5 and 15 kilograms of [cocaine]?," the district court asked the parties. *Id.* at A22. Both Kratz and the government agreed. *See id.* at A23. The court continued:

All right. Then based on the plea agreement and stipulation of facts of the parties and the Court's ruling on the motion to suppress the statement of the defendant and on the representations of counsel, the Court finds that the amount of controlled substance reasonably foreseeable to this defendant was more than 5, but less than 15 kilograms of cocaine hydrochloride. Now from my examination of the presentence report and having heard the evidence adduced today in the course of the hearing and having heard the arguments of counsel, I have concluded that the appropriate offense level in this case is a 29 with a criminal history of 3, which produces a sentencing range of 108 to 135 months, but there is a mandatory minimum penalty of 120 months, which makes the range of 120 to 135 months and a fine range of $15,000 to $4,000,000. Are there any objections to those findings [?]

*Id.* Both parties again agreed with the district court's findings; neither party objected. *See id.* The district court then reminded Kratz that he had waived his right to appeal, formally imposed the sentence and remanded Kratz to the custody of the Marshal. Kratz now appeals his sentence.

■ Kratz confronts many obstacles, the most significant of which is his signed plea agreement in which he waived his right to argue his case before this Court. We have generally upheld waivers of appellate rights in plea agreements. *See Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir.1999) (citing cases). In certain circumstances, we will not enforce the waiver. Thus, if the district court considers an impermissible factor (such as race) or the sentence exceeds the statutory maximum, appellate rights can survive a waiver. *See id.* at 1144–45. However, a mistake by the trial court in the application of the Sentencing Guidelines will not of itself resurrect the right to appeal. *See United States v. Feichtinger*, 105 F.3d 1188, 1190 (7th Cir.), *cert. denied*, 520 U.S. 1281, 117 S.Ct. 2467, 138 L.Ed.2d 223 (1997). A defendant can protect against such sentencing errors by entering a plea pursuant to Fed. R. Crim. P. 11(e)(1)(C). Otherwise, we will hold a defendant to his bargain—the good as well as the bad—unless

he can show that his case was marred by one of the fundamental errors that we have said might resurrect the appeal right. *See, e.g., United States v. Wenger,* 58 F.3d 280, 282–83 (7th Cir.1995).

 Kratz crafts a three-part argument in an attempt to circumvent the preclusive effect of the waiver. First, at sentencing, the district court must make explicit, reasoned findings on the quantity of drugs attributable to a defendant as relevant conduct and base those findings on reliable evidence. Estimates of the drug quantities attributable to the defendant are permissible, so long as the defendant is "on *notice* of all assumptions, rationale, and methodology underlying the calculation." *United States v. Howard,* 80 F.3d 1194, 1204 (7th Cir.1996) (emphasis added). Second, if the district court fails to make such explicit findings, or bases its findings on impermissible evidence, *see, e.g., United States v. McEntire,* 153 F.3d 424, 436–37 (7th Cir.1998), then the defendant is *not* put on notice about how his relevant conduct (i.e. drug quantities) was determined and he was therefore denied due process of law. Finally, Kratz compares due process violations to considerations of race or sentences in excess of the statutory maximum; appellate courts cannot enforce a waiver if, following the defendant's guilty plea, the defendant is denied due process during sentencing. As might be expected, Kratz applies these standards and concludes: (1) that the district court's findings were insufficient; (2) that this error constitutes a due process violation; and (3) that

1. At oral argument, the government did not contest that the plea agreement constituted no more than a recognition of the possible recommendations.

2. Kratz argues that the district court also erred by finding a quantity *range,* rather than an *exact figure.* He has failed to cite a case in which a court has overturned a range finding, and the cases he does cite, including *Howard,* 80 F.3d at 1204, use language which suggests that under some circumstances, range findings might be adequate. We need not resolve this issue, however, because we hold that the waiver of appeal rights is valid and effective.

his waiver is therefore invalid, allowing this Court to review the merits of his claim.

 This argument is clever, as we have already noted, but it is not convincing, at least not in its entirety. Kratz might be correct that the district court's findings here are inadequate. The district court seems to have been under the impression that the parties had agreed that if it denied Kratz's motion to suppress (as it did), then a finding of five-to-fifteen kilograms would follow automatically. However, the plea agreement makes it clear that the parties were only acknowledging what the government's relevant conduct *recommendations* would be under the respective possible scenarios (evidence suppression versus admission). Everything in the record (the plea agreement, the stipulation of facts, the transcript of the plea hearing, the PSR and Kratz's objections to the PSR) indicates only that Kratz understood what the government would recommend. Nothing in the record indicates that Kratz had in fact *agreed* to the five-to-fifteen kilogram recommendation prior to the sentencing hearing.[1] The district court was plainly mistaken, and probably should have made more explicit findings and calculations regarding the attributable drug quantities.[2] *See, e.g., McEntire,* 153 F.3d at 435–37; *Howard,* 80 F.3d at 1204.

But neither party objected to this error. The district court explicitly asked Kratz's attorney whether the defendant agreed that his relevant conduct covered five-to-

The government points out that the PSR made explicit quantity calculations and concluded that Kratz's relevant conduct covered five-to-fifteen kilograms. This is true. But those calculations are based on a flawed reading of Kratz's statement; he admitted to buying varying quantities of cocaine during periods of different lengths between 1993 and 1996, not a single quantity on a regular basis, as the PSR assumes. And, in any event, the district court did not expressly rely on the PSR when it made its own quantity finding.

fifteen kilograms. Kratz's attorney assented. Then, after summarily making the findings, the court again asked whether there were any objections. And Kratz's attorney again failed to call attention to the mistake.[3] Kratz cannot now complain that he was denied due process when he twice agreed with the district court's decision. *See, e.g., United States v. Hicks*, 129 F.3d 376, 378 (7th Cir.1997). More, the district court's error, if there was one, implicated the Guidelines, not the Constitution. The court's misunderstanding of the plea agreement, and the parties' failure to correct this misunderstanding, resulted in the court's making inadequate findings under the Guidelines and our interpretations of them. But as noted above, this error is not enough to invalidate Kratz's waiver. *See, e.g., Feichtinger*, 105 F.3d at 1190; *United States v. Ogden*, 102 F.3d 887, 889 (7th Cir.1996). We therefore reject Kratz's attempt to dress up this mistake as a due process violation and thereby confer enough constitutional significance on it to resurrect a right to appeal. *See United States v. Garcia*, 166 F.3d 519, 521–22 (2d Cir.1999) (rejecting arguments that Guideline errors amount to constitutional errors); *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir.1998) (same).

■ We are not holding that the mistakes of which Kratz complains—the district court's failure to make explicit, reasoned findings on the quantity of drugs attributable to him—might never rise to a constitutional level. Nor do we express a view about whether a due process violation at sentencing might be sufficient to invalidate a knowing and voluntary waiver of appeal rights. Different cases might present more compelling circumstances, and, of course, "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court." *United States v. Marin*, 961 F.2d 493, 496 (4th Cir.1992); *see also United States v. Yemitan*, 70 F.3d 746, 748

(2d Cir.1995). In this case, however, Kratz's attorney (and the government) sat by while the district court repeatedly expressed an erroneous interpretation of the plea agreement. Kratz's acquiescence in the court's findings based on that mistaken interpretation certainly does not lead to invalidation of his waiver of appeal rights. The waiver is valid, and the appeal is therefore Dismissed.

---

**3.** The government, which was a party to this agreement, also made no effort to correct the court's mistaken understanding of the plea agreement.