In the

# United States Court of Appeals
### For the Seventh Circuit

No. 15-3521

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARRYL ANTHONY WORTHEN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 15-cr-00006 — **Sarah Evans Barker**, *Judge.*

ARGUED OCTOBER 28, 2016 — DECIDED NOVEMBER 28, 2016

Before RIPPLE, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* As a FedEx driver, Darryl Worthen
delivered packages to Scott Maxie—the owner of a gun store
in southern Indiana called Muscatatuck Outdoors. Worthen
and Maxie knew each other well, as they often conversed dur-
ing the deliveries. Worthen even considered Maxie to be a
friend. But unfortunately, their friendship wasn't strong
enough to withstand Worthen's greed. Worthen decided to
rob Maxie—and he exploited their friendship to do it.

On September 20, 2014, Worthen called Maxie to set up a meeting under the guise of making a gun trade. But the true purpose of this meeting was to give Worthen and his confederates—his brother DeJuan and cousin Darion Harris—an opportunity to case Maxie's store. That afternoon, the three drove 76 miles from Indianapolis to the store, devising a plan to rob Maxie along the way. They met with Maxie for almost an hour, surveyed the store, and then left.

They returned the next day. This time, they brought along backpacks to carry the firearms that they planned to steal. During their drive, they decided not only to rob Maxie but also to kill him. To that end, Worthen brought a .22 caliber handgun. When they arrived at the store, Worthen conversed with Maxie. During their conversation, Worthen pulled out his handgun, pointed it at Maxie's face, and shot him in the eye, killing him.

The men then grabbed 45 firearms and loaded them into their backpacks. Worthen also stole Maxie's laptop, which was recording the video feed from the store's surveillance cameras. They then left the store, heading back to Indianapolis. En route, Worthen threw the murder weapon and laptop into a cornfield.

On September 22, 2014, police officers arrested Worthen, DeJuan, and Harris. The officers found only four of the stolen firearms in Worthen's possession. Worthen and his confederates had already distributed most of the firearms throughout Indianapolis. Indianapolis police officers found one of the firearms in October 2014 when executing a search warrant for drugs. And they discovered another firearm in February 2015 when investigating a shooting. In total, 36 of the 45 stolen firearms remain unrecovered.

On March 11, 2015, a grand jury indicted Worthen on four counts: (1) Hobbs Act robbery under 18 U.S.C. §§ 1951(a) and 2; (2) conspiracy to commit Hobbs Act robbery under 18 U.S.C. § 1951(a); (3) causing death while using or carrying a firearm during a crime of violence under 18 U.S.C. §§ 924(j) and 2; and (4) stealing firearms from a federal firearms licensee under 18 U.S.C. § 922(u). Hobbs Act robbery carries a prison term of up to 20 years, 18 U.S.C. § 1951(a); and a conviction on a crime-of-violence charge authorizes a sentence of death or life imprisonment, 18 U.S.C. § 924(j)(1). Worthen entered into a plea agreement with the government under which he agreed to plead guilty to these two charges and further agreed to waive his appeal rights. In exchange, the government agreed to drop the other charges and promised to not seek the death penalty.

The district court held the sentencing hearing on November 2, 2015. There, Worthen apologized to Maxie's family, and his attorney offered several mitigating factors, including Worthen's acceptance of responsibility, his difficult life circumstances, and his low risk for future violence. The government's response centered on the heinous nature of the crime, the suffering that Maxie's family had endured, and the havoc that the stolen firearms were wreaking on the Indianapolis streets. After considering the arguments, the court sentenced Worthen to 10 years for the Hobbs Act robbery and 50 years for the crime of violence for a total of 60 years' imprisonment.

Irrespective of the appeal waiver, Worthen now appeals his conviction, arguing that Hobbs Act robbery—the predicate offense for Worthen's § 924(j) conviction—is not a "crime of violence" as the statute defines that term. Thus, Worthen contends that his § 924(j) conviction is invalid.

Before we can address this argument, Worthen must con-
vince us that he has not waived his right to an appeal. Gener-
ally speaking, appeal waivers are enforceable and preclude
appellate review. *United States v. Sines*, 303 F.3d 793, 798 (7th
Cir. 2002). Even so, we have recognized a few narrow excep-
tions to this rule—one of which is that a defendant may al-
ways contest a sentence that exceeds the statutory maximum
for the crime committed. *United States v. Smith*, 759 F.3d 702,
706 (7th Cir. 2014). This makes perfect sense. When a defend-
ant pleads guilty to a crime and waives his right to an appeal,
he acquiesces to the court's discretion to impose a sentence
that he knows will fall within a specified statutory range. In-
deed, that's what makes the waiver knowing and intelligent,
and thus enforceable. But if the court disregards that permis-
sible sentencing range and imposes a sentence exceeding that
which the defendant knew was the harshest penalty he could
receive, then there is no knowing and intelligent waiver at all.

*United States v. Gibson* shows as much. 356 F.3d 761 (7th
Cir. 2004). There, the defendant pled guilty to violating 18
U.S.C. § 371—conspiracy to commit mail and wire fraud. The
district court sentenced him to 262 months, even though the
crime carried a maximum penalty of only 60 months. Alt-
hough he waived his appeal rights, we allowed him to appeal
his sentence, noting that we could not enforce a sentence that
the law does not authorize. *Id*. at 763–66.

Worthen contends that *Gibson*'s rationale applies here, too.
Specifically, he notes that he received 60 years' imprisonment
for committing both a robbery and a crime of violence, but the
crime-of-violence conviction is invalid. That leaves only the
robbery conviction, which carries a maximum sentence of 20
years' imprisonment. 18 U.S.C. § 1951(a). Accordingly,

Worthen argues that, because his 60-year sentence exceeds the statutory maximum for the only viable conviction, we should allow his appeal.

This argument misconstrues our holding in *Gibson*—a case that is easily distinguishable from this one. True enough, in *Gibson*, we considered the defendant's appeal—irrespective of his appeal waiver—after concluding that his sentence exceeded the statutory maximum. But reaching that conclusion required nothing more than comparing the sentence that the statute allowed to the sentence actually imposed. It did not require us to determine that the underlying conviction was invalid beforehand, as Worthen would have us do here.

And that distinction matters. To be clear, the crux of Worthen's argument is that the validity of his appeal waiver depends on the validity of his conviction. That argument is entirely circular. Indeed, to determine whether Worthen's crime-of-violence conviction is invalid, we would have to take the appeal in the first place. Then, only if we agree with Worthen and conclude that his conviction is in fact invalid would we find that Worthen's sentence exceeds the statutory maximum, which in turn would mean that Worthen did not waive his appeal rights. So the rule would be that an appeal waiver is enforceable unless the appellant would succeed on the merits of his appeal. That cannot be the law.

For if that were the law, then appeal waivers would lose all effect. That's because we would have to consider an appeal's merits in every case. In doing so, if we were to conclude that the defendant's conviction *was not* valid, then any sentence imposed necessarily would exceed the statutory maximum because there can be no punishment without liability; in that scenario, we would hold that the defendant did not

waive his right to an appeal. And if we were to conclude that the defendant's conviction *was* valid, then we would dismiss the appeal as waived so long as the sentence falls within the permissible statutory range; in that case, the appeal waiver would be irrelevant because we would have decided the appeal on the merits anyway. Consequently, this rule would eviscerate the right to waive an appeal.

Apart from contravening our longstanding precedent that appeal waivers are generally enforceable, such a rule would have perverse consequences. Many criminal defendants might benefit from waiving their appeal rights. In fact, Worthen so benefitted: in exchange for foregoing his appeal rights, the government agreed to drop some of the charges and further agreed to not seek the death penalty. Worthen perhaps saved his life by waiving his appeal rights. If Worthen could then renege on his deal and maintain an appeal, then why would the government make these kinds of deals in the future? Why wouldn't the government instead just charge defendants like Worthen with all applicable crimes and see what sticks after the appeal? Worthen's proposed rule is as undesirable as it is nonsensical.

Here, Worthen "expressly waive[d] his right to appeal [his] conviction and sentence … on any and all grounds." (R. 45 at 4.) His waiver precludes an appeal. We accordingly DISMISS Worthen's appeal without considering the merits.