

**FILED**

Jan 13 2017, 8:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Katherine A. Harmon
Jared S. Sunday
Mallor Grodner LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Christopher P. Jeter
Amy O. Carson
Massillamany & Jeter LLP
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Samuel W. Koonce, <br> *Appellant-Defendant,* <br><br> v. <br><br> Kim M. Finney, <br> *Appellee-Plaintiff.* | January 13, 2017 <br><br> Court of Appeals Case No. <br> 32A04-1604-CT-806 <br><br> Appeal from the Hendricks <br> Superior Court <br><br> The Honorable Rhett M. Stuard, <br> Judge <br><br> Trial Court Cause No. <br> 32D02-1503-CT-37 |

**May, Judge.**

Samuel W. Koonce ("Husband") appeals an order denying his Verified Motion for Relief from Judgment Pursuant to Trial Rule 60(B)(6) and his Verified Motion to Clarify Dissolution Decree. We affirm.

## Facts and Procedural History

Husband and Kim M. Finney ("Wife") were married on March 31, 1985, and divorced on August 7, 1998.[1] For all but approximately two months of the parties' marriage, Husband served in the United States Army. The dissolution court (hereinafter, "Dissolution Court") divided Husband's military pension benefits in the Dissolution Decree and ordered:

> 13. This Court has jurisdiction over the distribution and division of Husband's military pension benefits pursuant to I.C [sic] 31-9-2-42.
>
> 14. The Wife is entitled to direct payment from the Defense Finance and Accounting Services by virtue of 10 U.S.C. section 1408(d)(2) inasmuch as the parties [sic] marriage has continued for more than ten (10) years during which Husband has accrued active military service creditable for retirement benefits. Further, as the wife of an active duty military serviceman married for at least ten (10) years, Wife shall be entitled to all statutory benefits afforded her.
>
> 15. During the period from the date of marriage to the date of separation (March 31, 1985 to March 27, 1998) Husband accumulated 156 months of active Federal service for retirement;

---

[1] One child was born of the marriage in 1996 but the issues herein do not involve her custody or support.

Husband has accumulated a total of 156 months of active Federal service for retirement from his original enlistment date to the date of separation.

16.  The Wife shall receive 50% of the Member's disposable retired pay, before taxes, as defined by 10 USC 1408 (a)(4) and reduced by the cost of Husband's enrollment in the Survivor Benefit Plan (SBP) for spouse.  Wife shall be responsible for the payment of income taxes on her distributive share of Husband's military retired pay.  Wife's share shall be payable to the Wife/Former Spouse in the month the military member FIRST receives retired or disability retired pay; further, <u>Husband shall be responsible for making monthly payment directly to Wife for any month in which Husband received retired or disability retired pay where such payment to Wife has not been deducted and paid via monthly allotment.</u>

17.  Husband shall at the time of retirement elect and enroll in the spouse's option of the Survivor's Benefit Plan (SBP) and make Wife the beneficiary thereof; and the monthly cost of such SBP election shall be deducted from Husband's gross disposable retirement pay prior to calculation and payment of Wife's retirement distribution.

18.  Wife's entitlement to a distribution of Husband's military retired pay shall be documented by a duly executed and ordered Qualified Domestic Relations Order.  Husband and Wife shall each execute any necessary documents to effectuate this provision.

(App. Vol. II (hereinafter "App.") at 30-1) (emphasis in original).

[3]  Husband retired from the military in May 2005.  Upon his retirement, he paid Wife $325.00 per month out of his retirement pay.  In July 2014, Wife sent the

Defense Finance and Accounting Service ("DFAS") a copy of the parties' Dissolution Decree in order to begin receiving payments directly from DFAS as indicated in the Dissolution Decree. On October 1, 2014, DFAS sent Wife a check for $1,039.68, an amount which represented "31.7073% of Husband's gross monthly retirement pay." (*Id*. at 13.) Wife continued to receive payment from DFAS, which "included increases for cost-of-living and inflation." (*Id*.)

[4]     On December 22, 2014, Husband filed with the Dissolution Court a request for modification of child support under the original dissolution cause number ("Dissolution Action"). On March 9, 2015, Wife filed in a different court (hereinafter, "Civil Court") a separate civil action ("Civil Action") alleging

> fraud, constructive fraud, negligent misrepresentation, and unjust enrichment aimed at [Wife], over the course of nearly a decade, during which [Husband] deprived her of tens-of-thousands of dollars in military retired pay for which she was entitled per: (1) federal law; and (2) an order of this Court. Instead of fulfilling his legal obligations, [Husband] orchestrated a web of deceit to enrich himself at the expense of his ex-wife and minor child. He maintained this scheme through misrepresentations and/or omissions relating to retired pay calculations, child support, and the ability for [Wife] to obtain payment directly from the federal government without his consent. [Wife] only recently became aware of [Husband's] falsehoods and immediately worked with the federal government to obtain direct and accurate payments. Since that time, [Husband] has threatened to slander, intimidate, and shame [Wife].

(*Id*. at 39.) On March 17, 2015, Husband filed a Motion for Rule to Show Cause and/or Request for Clarification of the Dissolution Decree in the

Dissolution Action, requesting the Dissolution Court clarify the terms of the Dissolution Decree regarding Husband's military pension.

[5]   On March 19, 2015, Husband filed a motion to dismiss Wife's Civil Action, and the Civil Court denied his motion. Husband filed a motion to correct errors, which the Civil Court also denied. On December 8, 2015, while the motions in the Dissolution Action were still pending, Husband filed a Motion to Clarify Dissolution Decree as part of the Civil Action, asking the Civil Court to clarify the terms of the Dissolution Decree regarding Husband's military pension. Wife filed her answer thereto on January 4, 2016, and requested a hearing on the issue.

[6]   On January 7, 2015, Husband filed a motion in the Dissolution Court for relief from judgment under Indiana Trial Rule 60(B)(6), alleging the portion of the Dissolution Decree dividing Husband's military pension was void. On January 12, 2016, by agreement of both parties, the Civil Court consolidated all issues, except Husband's request for modification of child support, from the Dissolution Action into the Civil Action. Wife filed her response to Husband's Rule 60(B)(6) motion on January 28, 2016, in Civil Court.

[7]   The Civil Court held a hearing on Husband's motion to clarify and Rule 60(B)(6) motion on February 16, 2016. Husband requested findings of fact and conclusions of law by motion the same day. On March 17, 2016, the Civil Court issued its order on Husband's motions, denying them both.

[8] On April 6, 2016, Husband requested the Civil Court certify its order for interlocutory appeal and the Civil Court did so on April 11, 2016. On April 15, 2016, Husband filed two appeals: one indicating the Civil Court's order was a final judgment, and the other requesting our court assume jurisdiction over the Civil Court's order as a permissive interlocutory appeal. We accepted jurisdiction over the interlocutory appeal on May 13, 2016, and ordered the appeals consolidated.

## Discussion and Decision

[9] Husband requested the Civil Court enter written findings and conclusions in support of its judgment. In such a circumstance, we apply a two-tiered standard of review. *Maddux v. Maddux*, 40 N.E.3d 971, 974 (Ind. Ct. App. 2015), *reh'g denied*.

> First, we determine whether the evidence supports the findings, and second whether the findings support the judgment. We will reverse only if there is no evidence supporting the findings or the findings fail to support the judgment. We review the findings of fact using a clearly erroneous standard. Clear error occurs when our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made. We review the conclusions of law using a de novo standard.

*Id*. at 974-75 (footnote and internal citations omitted).

## Trial Rule 60(B)(6) Motion

[10]   Under Indiana Trial Rule 60(B)(6), the trial court may relieve a party from a judgment if "the judgment is void." *Id.* A motion requesting relief under Rule 60(B)(6) "shall be filed within a reasonable time." T.R. 60(B). Our standard of review regarding a motion for relief from judgment pursuant to Rule 60(B)(6) "requires no discretion on the part of the trial court because either the judgment is void or it is valid" and, thus, our review is *de novo. Rice v. Com'r, Indiana Dept. of Envtl. Mgmt.*, 782 N.E.2d 1000, 1003 (Ind. Ct. App. 2003) (quoting *Hotmix & Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 826 (Ind. Ct. App. 1999)). To prevail under Rule 60(B)(6), the party must demonstrate the prior judgment was void, and not merely voidable. *Id.*

[11]   "The distinction between the terms 'void' and 'voidable' is critical in this context." *Chapin v. Hulse*, 599 N.E.2d 217, 220 (Ind. Ct. App. 1992), *trans. denied*. A decision that is void "has no legal effect at any time and cannot be confirmed or ratified by subsequent action or inaction" and "is subject to a collateral attack." *Id.* A decision which is voidable "has legal effect until such time as challenged in the appropriate manner and can be ratified or confirmed by subsequent action or inaction" and "may only be attacked through a direct appeal." *Id.*

[12]   We further note our Indiana Supreme Court's commentary regarding the misuse of jurisdiction arguments as a ploy to escape a waiver of direct appeal.

> Far too often there is an inclination in a law suit [sic] to attempt to convert a legal issue into one of "jurisdiction" and from that point contend all actions of the court are void, and that the question of jurisdiction may be raised at any time or that the proceedings are subject to collateral attack and are a matter for original writs in this court.

*J.I. Case Co. v. Sandefur*, 245 Ind. 213, 217-18, 197 N.E.2d 519, 521 (1964). In *R.L. Turner Corp. v. Town of Brownsburg*, the Court provided a tutorial in jurisdiction:

> To act in a given case, a trial court must possess both subject matter jurisdiction and personal jurisdiction. Subject matter jurisdiction exists when the Indiana Constitution or a statute grants the court the power to hear and decide cases of the general class to which any particular proceeding belongs. Personal jurisdiction exists when a defendant both has sufficient minimum contacts within the state to justify a court subjecting the defendant to its control, and has received proper notice of a suit against him in that court.

963 N.E.2d 453, 457 (Ind. 2012). The Court provided an example of this confusion between legal issues and true jurisdiction problems in *K.S. v. State*:

> Thus, while we might casually say, "Judge Flywheel assumed jurisdiction," or "the court had jurisdiction to impose a ten-year sentence," such statements do not have anything to do with the law of jurisdiction, either personal or subject matter. Real jurisdictional problems would be, say, a juvenile delinquency adjudication entered in a small claims court, or a judgment rendered without any service of process. Thus, characterizing other sorts of procedural defects as "jurisdictional" misapprehends the concepts.

849 N.E.2d 538, 541-2 (Ind. 2006).

[13]  In this case, the Civil Court found:

> 41.  The "void" requirement of Trial Rule 60(B)(6) has been interpreted to mean that the trial court lacked jurisdiction when it issued the judgment in question. *Gourley v. L.Y.*, 657 N.E.2d 448, 449 (Ind. Ct. App. 1995), *trans. denied*.

> 42.  Indiana Courts have rejected arguments, similar to that made by [Husband] in this case, which seek to expand the limited scope of Rule 60(B)(6). *See Dusenberry v. Dusenberry*, 625 N.E.2d 458, 461-62 (Ind. Ct. App. 1993) (dismissing wife's claim that dissolution decree was void because it improperly included a personal injury settlement as property, and holding that such relief was not available to wife under Trial Rule 60(B)(6) since the wife's argument was not "jurisdictional," but a claim "that the Decree was erroneous, as a matter of law . . .").

> 43.  Just as with the former spouse in *Dusenberry*, [Husband] does not challenge this Court's jurisdiction, but claims that it improperly included items as marital property which should not have been included.  It thus follows that the Decree is not void, but merely voidable, and [Husband] is not entitled to relief under Rule 60(B)(6).

(App. at 16.)  As the Civil Court found, *Dusenberry* is essentially on point with the facts of this case.

[14]  In *Dusenberry*, the parties, Gerald and Carolyn, divided the settlement from a pending personal injury suit as part of their Divorce Settlement.  The decree provided "for an equal division of the net settlement proceeds from the suit."

*Dusenberry*, 625 N.E.2d at 459. When the personal injury suit concluded, Carolyn had incurred additional expenses not considered when the parties agreed to an equal division of the net settlement proceeds from the personal injury suit. She petitioned the trial court under Rule 60(B)(6) to modify or rescind the part of the Divorce Decree addressing the settlement proceeds to take into account the change in circumstances. She argued as part of her Rule 60(B)(6) motion "that the trial court lacked 'jurisdiction' over the pending tort claim and, therefore, that the division of the settlement proceeds was void." *Id*. at 461. Our court noted the well-established rule that "[r]elief from a 'void judgment' is available when the trial court lacked either personal or subject matter jurisdiction." *Id*. at 461-2. Our court rejected Carolyn's argument "the Decree was erroneous, as a matter of law, because the value of the personal injury settlement was contingent and was not a marital asset which could be divided. [Thus] [t]he error alleged is not jurisdictional. The Decree is not void." *Id*. at 462.

[15] Like in *Dusenberry*, Husband argues his military retirement pension should not have been included as part of the marital estate. He does not question the personal or subject matter jurisdiction of the Civil Court. However, he cites case law subsequent to *Dusenberry* to support his argument that a judgment can be declared void for a reason outside of personal and subject matter jurisdiction. We examine that case law and Husband's argument now.

[16] In *Beanblossom v. State*, our court declared: "A judgment may be void for want of authority in a court to render the particular judgment though the court may

have jurisdiction over the subject matter and the parties." 637 N.E.2d 1345, 1349 (Ind. Ct. App. 1994), *trans. denied*. Based thereon, Husband argues:

> In a dissolution case, a trial court has authority to divide marital assets, but does not have authority to divide assets outside of the marital pot. . . . [Husband's] military retired pay did not exist at the time of the dissolution, so there was nothing for the trial court to have jurisdiction over. . . . As the trial court did not have any authority to enter the Decree, it must be found to be void *ab initio*.

(Br. of Appellant at 24.)

[17] The issue in *Beanblossom* involved sentence modification under Ind. Code § 35-38-1-17(a) (1994), which permitted a trial court to modify a sentence within a 365-day window, provided certain circumstances were met. However, the statute provided, "[i]f more than three hundred sixty-five (365) days have elapsed since the defendant began serving the sentence and after a hearing at which the convicted person is present, the court may reduce or suspend the sentence, subject to the approval of the prosecuting attorney." Indiana Code § 35-38-1-17(b) (1994). The trial court granted Beanblossom's motion for modification of sentence approximately ten years after he began serving his sentence. The State filed a motion to correct error, invoking the provisions of Indiana Code § 35-38-1-17(b) (1994), because the prosecuting attorney had not approved any sentence modification and the petition was filed outside the 365-day window allowed in Indiana Code § 35-38-1-17(a) (1994). The trial court

granted the State's motion to correct error, and we affirmed that decision. *Beanblossom*, 637 N.E.2d at 1349.

[18] We based our *Beanblossom* decision on an earlier case with similar facts, *Christakis v. State*, 493 N.E.2d 471, 472 (Ind. Ct. App. 1986). In *Christakis*, we reversed the trial court's decision to grant Christakis' request for probation pursuant to Indiana Code § 35-7-1-1 (1976), which provided a 180-day window for the trial court to grant probation. 793 N.E.2d at 472. *Christakis* relied on *State ex rel. Abel v. Vigo Circuit Court*, in which our Indiana Supreme Court, in examining the same statute in *Christakis*, stated:

> The clear intention of the legislature is to give the trial court an opportunity to sentence a defendant but keep reserved in his judgment an opportunity to review incarceration of the defendant up to 180 days within which time he may grant probation as though it were originally done at the time of sentencing. Prior to the enactment of this provision, a trial court had no authority over a defendant after he pronounced a sentence. The jurisdiction over the defendant then went to the Department of Correction. This statute gave the trial judge an additional 180 days to consider or reconsider the probation aspect of the sentencing. . . . We hold the grant of such power by the legislature is jurisdictional and that upon the expiration of the 180 days notwithstanding any petitions filed by the defendant, the court loses further jurisdiction over the defendant so far as the alteration of his sentence is concerned.

462 N.E.2d 61, 63 (Ind. 1984). Thus, in *Beanblossom*, *Christakis*, and *Abel*, the judgments were void because, while the trial court had authority to modify the sentences at one time, the court's judgment was rendered outside the limited

time in which the legislature had granted the court authority to act. Thus, at the time the court acted, there was no longer a justiciable question before the court.[2]

[19] This reasoning was extended to relief from civil judgments in *Alexander v. Cole*, 697 N.E.2d 80, 82-3 (Ind. Ct. App. 1998), *superseded by statute on other grounds*. In *Alexander*, the father sought relief from the dissolution court's *ex parte* order awarding mother legal custody of the couple's two older children. The father filed a motion for relief under Rule 60(B)(6), alleging the dissolution court's order was void because there was a Child in Need of Services (CHINS) petition pending and the CHINS court retained jurisdiction over the children until that action ceased. The statutes at issue provided, in relevant part: "A juvenile court has exclusive original jurisdiction . . . [in] (2) Proceedings in which a child, including a child of divorced parents, is alleged to be a child in need of services under IC 31-34[,]" Ind. Code § 31-30-1-1(2) (1997), and "the juvenile court's jurisdiction over . . . a child in need of services and over the child's parent . . . continues until: (1) the child becomes twenty-one (21) years of age, unless the court discharges the child and the child's parent . . . at an earlier time[.]" Ind. Code § 31-30-2-1 (1997).

[20] We cited *Beanblossom* for the premise "a judgment may be void for a court's lack of authority to render the particular judgment even though the court may

---

[2] Justiciability is: "The quality, state, or condition of being appropriate or suitable for adjudication by a court. See MOOTNESS DOCTRINE; RIPENESS. Cf. STANDING." BLACK'S LAW DICTIONARY (10th Ed. 2014) at 997.

have jurisdiction over the subject matter and the parties." *Alexander*, 697 N.E.2d at 83. We held the dissolution court was without authority to make the custody determination because the CHINS court retained jurisdiction until "that court discharged the parties or transferred the case." *Id*. at 82. As in *Beanblossom* and the related cases, Indiana Code §§ 31-30-1-1 & 31-30-2-1 allowed no latitude in interpretation of the dissolution court's authority - if a pending CHINS case gave the CHINS court exclusive jurisdiction over the child at issue, the dissolution court could not adjudicate any question regarding that child.

[21] Similarly, in *In re Guardianship of A.J.A.*, 991 N.E.2d 110, 115 (Ind. 2013), our Indiana Supreme Court found the trial court's grandparent visitation order void because grandmother did not have standing to pursue a grandparent visitation order under Indiana Code § 31-17-5-1, which allows a grandparent to seek visitation if "(1) the child's parent is deceased; (2) the marriage of the child's parents has been dissolved in Indiana; or (3) subject to subsection (b), the child was born out of wedlock." While A.J.A.'s mother was dead, her father was alive and incarcerated for her mother's murder. The parents were married when A.J.A. was born and did not dissolve their marriage prior to mother's murder. As such, the controlling statute did not grant the court any authority to render a judgment providing visitation for grandmother.

[22] The facts here are distinct from those in the cases above where a judgment was held void because the court lacked authority to render its decision. In *Beanblossom*, *Christakis*, and *Abel*, the trial court had authority at one point, but

that authority expired after a certain time limit. Similarly, in *Alexander* and *A.J.A.*, the trial court had authority to rule in certain circumstances, but that authority was limited by another court's exclusive jurisdiction, in the case of *Alexander*, or the party's lack of standing, as in *A.J.A.* The authority vested or rescinded in each of these cases was apparent on the face of the complaint, without the court needing to address the merits of any underlying factual issue or legal argument in the case. The trial court simply did not have statutory authority to act under the circumstances that existed.

[23] In contrast, it is undisputed the Dissolution Court here had authority to adjudicate the property division requested by the parties as part of its Dissolution Order. *See* Ind. Code § 31-15-7-4 (providing terms by which the court "shall" divide the property of the parties in a dissolution action). Whether Husband's military pay is "property" under Indiana Code § 31-9-2-98(3) is subject to interpretation, as is evident from the complexity of the arguments set forth by the parties and the variety of holdings in precedent. However, none of the parties' current arguments regarding Husband's military pay could deny the Dissolution Court of its authority to adjudicate the property division under Indiana Code Section 31-15-7-4 at the time the decree was entered.

[24] We decline Husband's invitation to examine the merits of his underlying legal argument in order to determine whether the Dissolution Court had authority to render any judgment at all. As the Seventh Circuit Court of Appeals stated in a recent similar matter, if we were to consider such a circular argument, "then

appeal waivers would lose all effect. That's because we would have to consider an appeal's merits in every case." *United States v. Worthen*, 2016 WL 6936553 (7th Cir., November 28, 2016).[3]

Husband's opportunity to contest the terms of the Dissolution Decree involving his military pension passed almost twenty years ago. He cannot now attempt to revive this waiver by filing a Rule 60(B)(6) motion. *See R.L. Turner*, 963 N.E.2d at 457 ("[A] party who was asleep at the wheel has a powerful incentive to couch a claim of procedural error as a jurisdictional defect either to circumvent the doctrine of waiver or to open up an avenue for collateral attack."). The Civil Court did not err when it denied Husband's motion for relief from judgment under Rule 60(B)(6).

---

[3] In *Worthen*, the appellant sought modification of his sentence by challenging the validity of his underlying conviction after he pled guilty to the crimes. The Seventh Circuit explained:

> To be clear, the crux of Worthen's argument is that the validity of his appeal waiver depends on the validity of his conviction. That argument is entirely circular. Indeed, to determine whether Worthen's crime-of-violence conviction is invalid, we would have to take the appeal in the first place. Then, only if we agree with Worthen and conclude that his conviction is in fact invalid would we find that Worthen's sentence exceeds the statutory maximum, which in turn would mean that Worthen did not waive his appeal rights. So the rule would be that an appeal waiver is enforceable unless the appellant would succeed on the merits of his appeal. That cannot be the law.

*Worthen*, slip op. at 2.

# Motion to Clarify

[26] Husband filed a motion for clarification of the Dissolution Decree. The legislature provided that "orders concerning property disposition entered under this chapter (or [Indiana Code §] 31-1-11.5-9 before its repeal) may not be revoked or modified, except in case of fraud." Ind. Code § 31-15-7-9.1(a). However, the trial court may "entertain a petition the nature of which is to seek clarification of a prior order." *Thomas v. Thomas*, 577 N.E.2d 216, 219 (Ind. 1991)).

[27] The Indiana Trial Rules do not provide for a motion for clarification; however, we have held, "it would elevate form over substance to treat a 'motion to clarify' as anything other than a motion to correct error." *Hedrick v. Gilbert*, 17 N.E.3d 321, 326 (Ind. Ct. App. 2014). In *Hedrick*, Gilbert filed a "motion to clarify" over thirty days after the trial court's final judgment. The trial court granted the "motion to clarify." Hedrick appealed following the trial court's order on Gilbert's "motion to clarify" and Gilbert argued Hedrick's appeal was untimely. Our court likened Gilbert's "motion to clarify" as a "motion to correct error," stating

> Indiana Trial Rule 59(F) plainly states that "[a]ny *modification* . . . following the filing of a Motion to Correct Error shall be an appealable final judgment or order." (Emphasis added). Here, the trial court unquestionably modified its original order by adding new terms to it. Because Hedrick filed his Notice of Appeal within thirty days of the trial court's order issued in response to the motion for clarification, we find that this appeal is timely and will address the issues raised herein.

*Id.* (emphasis in original). While we ultimately hold the Civil Court's denial of Husband's Motion to Clarify did not modify terms of the agreement, we find the reasoning used in *Hedrick* appropriate to determine our standard of review.

[28] A trial court has broad discretion in ruling on a motion to correct error. *Volunteers of Am. v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 658 (Ind. Ct. App. 2001). We will reverse only for an abuse of that discretion. *Id.* An abuse of discretion occurs if the decision was against the logic and effect of the facts and circumstances before the court or if the court misapplied the law. *Id.*

[29] Here, Husband argues the Civil Court's denial of his Motion to Clarify resulted in an impermissible modification of the Dissolution Decree. He argues the circumstances in *Pherson v. Lund*, 997 N.E.2d 367 (Ind. Ct. App. 2013), are "almost identical" to those before us. (Br. of Appellant at 27.) *Pherson* is distinguishable.

[30] In *Pherson*, the parties, Michael and Judith, were married in 1979 and divorced by settlement agreement in 1991. During the entirety of the marriage Michael worked for a railroad. The settlement agreement provided:

> Husband . . . is presently entitled to benefits provided under the Railroad Retirement Act. Section 14 of the Act as amended provides that the "Tier II Component" may be subject to division by a Dissolution of Marriage Decree. The Wife shall be awarded and is entitled to one-half of the Husband's "Tier II" portion of benefits subject to division under Section 14 of the Railroad Retirement Act as amended, and if available at the time of distribution the Railroad Retirement Board will pay directly to

the Wife said 50% portion of the "Tier II" benefits as set out above.

*Pherson*, 997 N.E.2d at 368. The court further explained:

> Judith Lund, Petitioner, is awarded and the Railroad Retirement Board is directed to pay an interest in the portion of Michael T. Lund, social security number XXX, benefits under the Railroad Retirement Act (45 U.S.C. Section 231, et seq.) which may be divided as provided by Section 14 of that Act (45 U.S.C. Section 231m). Judith Lund's share shall be fifty percent (50%) of the Tier II portion of the benefits of Michael T. Lund.

*Id*. at 368-9. After dissolution, Michael worked for eighteen and a half years at the railroad. When he retired, Judith received half of his pension as directed by the settlement agreement. Michael sought clarification of the settlement agreement, arguing Judith was entitled only to the value of his pension at the time they entered into the settlement agreement, not to the value of his pension after an additional eighteen years of post-dissolution employment.

[31] The trial court agreed with Michael and concluded Judith was entitled to only fifty percent of the value of Michael's pension at the time of dissolution:

> It is clear that property acquired by one spouse in his or her own right after final separation should not be considered a marital asset subject to division. In the case at bar, the Respondent worked at his job, earning 18 ½ additional years' worth of Tier II benefits after the parties were divorced. That portion of the Tier II benefits normally would not be subject to division by the divorce court, since the benefits had not been earned and did not exist at the time of final separation.

*Id.* at 370 (internal citations omitted). Judith appealed, and we agreed with the trial court:

> The agreement in this case simply failed to assign a value to the vested pension exclusive of future contributions. It fell to the trial court to do so. Generally, a dissolution court may, when valuing a marital asset, select a date between the filing of the dissolution petition and the date of the final hearing. Here, the valuation date ultimately selected by the trial court to correspond to the 50/50 split was that most favorable to Wife, the date of the final hearing on property distribution. The coverture fraction reflects this valuation date; we find no error.

*Id.* at 371 (internal citation and footnote omitted).

[32]  In the present case, the terms regarding Husband's pension are not as ambiguous and take into account the fact Husband and Wife were married for only a portion of the time used to determine Husband's final pension amount. To address that issue, the Dissolution Decree noted, "during the period from the date of marriage to the date of separation (March 31, 1985 to March 27, 1998) Husband accumulated 156 months of active Federal service for retirement[.]" (App. at 30.) Based thereon, the Dissolution Court ordered, "Wife shall receive 50% of [Husband's] disposable retired pay, before taxes[.]" (*Id.* at 31.)

[33]  In its order denying Husband's Motion to Clarify, the Civil Court found, regarding the disbursement of Husband's pension to Wife:

> 15. DFAS is charged with the administration of Department of Defense payments, including retirement benefits.

16. In October 2014, DFAS sent $1,039.68 directly to [Wife], representing 31.7073% of [Husband's] gross monthly military retirement pay.

17. This 31.7% number is arrived at by calculating the percentage of [Husband's] military service that occurred while married to [Wife] (63.4% of his total service occurred during the marriage OR 156 months out of total service of 246 months), and then giving [Wife] 50% of that amount as ordered by the Court in the Decree. (.634 x .5 = .31707).

\* \* \* \* \*

54. DFAS deals with decrees from various courts from all over the country every day. They were able to interpret and give full effect to the Decree as written in 1998 and asked no questions and raised no red flags.

\* \* \* \* \*

56. DFAS . . . interpreted the Decree in a manner reasonably calculated to give effect to every provision of the Decree related to the pension.

57. This is a strong signal to the Court that its 1998 decree was correct when issued and remains so now.

(*Id.* at 13, 17-18.)

[34]     Although the Civil Court denied Husband's motion to clarify, it examined the process DFAS used to determine Wife's share of Husband's pension, and in doing so, the Civil Court explained why Wife was receiving the legally

appropriate amount of Husband's pension. Unlike the initial pension allocation in *Pherson*, the DFAS calculation herein takes into account the fact Husband worked for seven years post-dissolution by giving Wife half of the pension Husband earned during their marriage. Because the DFAS calculation is consistent with the terms of the Dissolution Decree and provides Wife with only half of the pension Husband earned during the marriage, we find no abuse of discretion in the Civil Court's denial of Husband's motion to clarify.

# Conclusion

[35] Because the Dissolution Court's Divorce Decree was not void, Husband is not entitled to relief from the judgment under Rule 60(B)(6). The Civil Court did not abuse its discretion when it denied Husband's motion to clarify. We accordingly affirm.

[36] Affirmed.

Kirsch, J., and Crone, J., concur.