In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2350

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CURTIS L. JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cr-00053 — **Michael J. Reagan**, *District Judge.*

ARGUED APRIL 1, 2019 — DECIDED AUGUST 20, 2019

Before EASTERBROOK, SYKES, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* During an in-chambers confer-
ence among court and counsel, Curtis Johnson's attorney
withdrew an objection to the restitution amount to be paid to
the victims of his client's wire fraud. Johnson was not present.
Then, in open court, Johnson confirmed he no longer disputed
restitution, recognized the plea agreement included an appeal
waiver, pleaded guilty, and was sentenced. Johnson now
challenges his sentence, arguing he did not waive this appeal

and his sentence is unconstitutional because he was not present when his attorney dropped the restitution objection. We uphold the appeal waiver and dismiss Johnson's appeal.

## I

For almost three years, Johnson managed financial and production operations for a business that produces hand rails in Fishers, Indiana owned by the Tuttle family.[1] He kept the books, paid vendors, purchased equipment, and entered into loan agreements for the company, so he had access to and signature authority for the company's bank accounts and the company's credit.

During that time Johnson defrauded the company by using its funds and credit card for personal expenses, including a hot tub and three "company" cars for his family members. He wired money directly from the company's bank account into his personal bank account, and he obtained company loans from which he skimmed some proceeds.

The company discovered Johnson's fraud and fired him, but the damage was done. The business had to pay back the loans, and the owners were forced to use personal retirement and college savings to ward off creditors. The Tuttle family ultimately lost its business.

Johnson was indicted on eight counts of wire and mail fraud. He eventually pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. The plea agreement

---

[1] Johnson's titles were chief operating officer and chief financial officer of Tuttle Aluminum and Bronze Co., Inc. and of Tuttle Railing Systems, a division of Tuttle Aluminum, which we refer to collectively as "the company."

contained an appeal waiver. It also stated the government's position that Johnson owed restitution totaling $211,428.80, comprised of credit card purchases, vehicle payments, cash withdrawals, wire transfers, and diverted loan proceeds. Johnson agreed he owed the victims restitution, but he disputed the amount.

The presentence investigation report adopted the government's restitution calculation. Johnson never submitted a sentencing memorandum, and he has never specified his own restitution figure. At one point he hypothesized that a loss range between $40,000 and $95,000 would result in a lesser offense level, but ultimately provided no calculation detailing what he believed that figure should be.

Johnson's guilty plea and sentencing took place at the same hearing, during which the victims of Johnson's crime addressed the court. Before the hearing, the district judge met with counsel for the government and the defendant in chambers and off the record. Then, on the record early in the hearing, the court reviewed the plea agreement with Johnson, noting the in-chambers conference:

> THE COURT: My understanding, in meeting with counsel off the record, is that the amount of restitution and loss is not in dispute now; is that correct?
>
> [DEFENSE COUNSEL]: That's correct, Your Honor.
>
> THE COURT: … So restitution in the amount of $211,428.80 plus interest will be ordered, … Do you understand all of that?
>
> THE DEFENDANT: Yes.

The court also reviewed with Johnson terms in the plea agreement, including his previous dispute with the restitution amount:

> THE COURT: Next, over on page 6, there's a sentence regarding restitution. This indicates that restitution is in dispute. It is no longer in dispute; correct?
>
> THE DEFENDANT: Yeah, yes.

The district court also twice reviewed with Johnson the waiver of his right to appeal, which provided:

> **Direct Appeal:**
>
> … in exchange for the concessions made by the Government in this Plea Agreement, … [t]he defendant further agrees that in the event the Court sentences the defendant to [a] sentence within the applicable Advisory Guidelines Range as calculated by the Court at sentencing, … then the defendant expressly waives the defendant's right to appeal the sentence imposed in this case on any ground, …

The court accepted Johnson's guilty plea and adopted the presentence report's proposed guideline range of 21 to 27 months. In his allocution, Johnson told the court, "I understand the restitution and, if given the opportunity, I will repay all of that." Since the company fired him, Johnson had bought into a small-town accounting practice and was earning some money. The district court noted in its sentencing remarks the tension between incarceration and securing restitution for the victims through Johnson's private sector earnings. After a thorough and complete hearing, the district court sentenced

Johnson to 21 months' imprisonment and ordered $211,428.80 in restitution, plus interest.

Johnson appeals.[2] According to him, the appeal waiver in the plea agreement should not preclude this challenge, as he was "sentenced unconstitutionally." Johnson contends the off-the-record, in-chambers conference was an integral part of his sentencing hearing, so his absence violated his constitutional right to be present at sentencing. He also asserts he did not waive any arguments about the restitution, or his right to attend the in-chambers conference.

## II

A defendant may waive the right to appeal his sentence. *See* FED. R. CRIM. P. 11(b)(1)(N). We review de novo the enforceability of an appeal waiver in a plea agreement. *United States v. Alcala*, 678 F.3d 574, 577 (7th Cir. 2012) (citation omitted). "A defendant may waive appellate rights through a plea agreement, assuming such waiver is voluntary and knowing." *United States v. Galloway*, 917 F.3d 604, 606 (7th Cir. 2019) (citing *United States v. Worthen*, 842 F.3d 552, 554 (7th Cir. 2016). "A written appellate waiver signed by the defendant will typically be voluntary and knowing, and thus enforceable through dismissal of a subsequent appeal." *Id*. (citation omitted).

---

[2] Johnson's notice of appeal challenges the judgment of conviction in this case, and the conclusion of Johnson's principal brief asks this court to reverse and vacate his conviction and remand for further proceedings. But the arguments in Johnson's briefs challenge only his sentence, not the voluntariness of his guilty plea or any other aspect of his conviction. This discrepancy is not material given our conclusion that Johnson waived this appeal.

We interpret the terms of a plea agreement ''according to the parties' reasonable expectations and construe any ambiguities in the light most favorable to the defendant.'' *United States v. Shah,* 665 F.3d 827, 837 (7th Cir. 2011) (citing *United States v. Quintero,* 618 F.3d 746, 750 (7th Cir. 2010)). We also consider the plea colloquy, evaluating whether the district court ''properly informed the defendant that the waiver may bar the right to appeal.'' *Id.* (with same citation).

The written plea agreement signed by Johnson included the appeal waiver. He was sentenced within the guidelines range to 21 months, so per the plea agreement he "expressly waive[d his] right to appeal the sentence imposed in this case on any ground." "[R]estitution is part of a sentence," *United States v. Perillo*, 897 F.3d 878, 883 (7th Cir. 2018) (citations omitted), so the waiver language includes Johnson's challenge to that figure. *See United States v. Worden*, 646 F.3d 499, 502 (7th Cir. 2011) ("Because restitution is part of a criminal sentence, and [the defendant] agreed not to challenge the sentence, he may not appeal the restitution order.") (citation omitted).

Johnson argues his circumstances fall into a due process exception to the appeal waiver. A defendant's presence "is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934)). Because restitution was the only issue remaining in the case when he pleaded guilty and was sentenced—as evidenced by him not stipulating to the government's restitution figure in the plea agreement—to uphold the waiver on that question, he submits, would depart from the "minimum of civilized

procedure." *See United States v. Adkins*, 743 F.3d 176, 192–93 (7th Cir. 2014) (holding an appeal waiver will not prevent a defendant from challenging "some minimum of civilized procedure").

Johnson also contends he focused his energies and defense on the restitution debate, so that issue must be of a constitutional magnitude. But due process violations do not turn on a defendant's subjective valuation of the alleged error. Rather, to resurrect a right to an appeal this court has recognized "fundamental errors," *United States v. Kratz*, 179 F.3d 1039, 1042 (7th Cir. 1999). But this case does not present any of the recognized examples of procedural defects marring a sentence with fundamental error, such as a sentence based on the defendant's race, or which exceeds the statutory maximum for the defendant's particular crime. *See Adkins*, 743 F.3d at 192–93 (citing *United States v. Bownes*, 405 F.3d 634, 637 (7th Cir. 2005)). For example, in *Adkins* the defendant's sentence included a special condition that prohibited "view[ing] or listen[ing] to" certain materials "or patroniz[ing] locations where such material is available," which this court invalidated as unconstitutionally vague and overbroad. 743 F.3d at 194. That is far afield from the detailed and substantiated restitution figure Johnson opposes.

There is no fundamental error here. At the plea and sentencing hearing, the district court reviewed with Johnson in detail what the appeal waiver meant. The court also gave examples of reasons that Johnson could still appeal despite the waiver, such as prosecutorial misconduct or a retroactive beneficial amendment to the sentencing guidelines. Johnson said he understood it would be difficult to pursue such an appeal and acknowledged the slim chances of success. And in

exchange for his promises in the plea agreement—including the appeal waiver—Johnson obtained dismissal of seven of the eight counts in the indictment. *See United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995) ("[Defendant] exchanged the right to appeal for prosecutorial concessions; he cannot have his cake and eat it too.")

Next, Johnson claims he did not intentionally relinquish any arguments about the restitution amount. We construe waiver principles liberally in favor of defendants. *United States v. Jaimes-Jaimes*, 406 F.3d 845, 847 (7th Cir. 2005) (citations omitted). But the topic of restitution arose approximately twenty times during the plea and sentencing hearing. Though Johnson spoke numerous times during the nearly one-hour hearing, he did not object to his absence from the in-chambers meeting, or to the court's statement that the dispute about the restitution amount had been resolved. Despite numerous opportunities to dispute the amount of restitution owed, Johnson never spoke up to contest that figure.

Indeed, shortly after Johnson was placed under oath, he expressly agreed to the precise restitution amount of $211,428.80. So even if the appeal waiver did not preclude this argument, the record of the plea and sentencing hearing shows Johnson deliberately abandoned his position that the restitution figure should be less. *See United States v. Hathaway*, 882 F.3d 638, 642 (7th Cir. 2018) (holding defendant waived and did not just forfeit any objections to calculation of restitution amount).

In sum, Johnson's circumstances do not present a due process exception to the rule that most written appeal waivers are effective. Although there are limits to an appeal waiver, *see Bownes*, 405 F.3d at 637, Johnson does not fall outside them.

Johnson's appeal waiver resolves this case. For the reasons discussed, we DISMISS this appeal.