*Pursuant to Indiana Appellate Rule 65(E), the trial court and parties shall not take any action in reliance upon this opinion until it is certified.*



IN THE

# Indiana Supreme Court

Supreme Court Case No. 26S-PL-192

## Franklin T. Wike, et al.,

*Appellants*



FILED

Jun 24 2026, 11:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## Grandview Solar Project, LLC; Town of Grandview, Indiana Board of Zoning Appeals; Town of Grandview, Indiana Town Council; and Town of Grandview, Indiana Zoning Administrator,

*Appellees*

Argued: October 30, 2025 | Decided: June 24, 2026

Appeal from the Spencer Circuit Court
No. 74C01-2402-PL-55

The Honorable Nathan A. Verkamp, Special Judge

On Petition to Transfer from the Indiana Court of Appeals
Case No. 24A-PL-1867

**Opinion by Justice Massa**

Justices Slaughter and Molter concur.
Justice Goff dissents with separate opinion, in which Chief Justice Rush
joins.

**Massa, Justice.**

Normally, challenges to a board of zoning appeals' decision need to be brought within 30 days of the decision. But Indiana recognizes the *ultra vires* doctrine, which, applied here, says some board of zoning appeals' actions might be **void**, meaning vulnerable to a lawsuit at any time, even long after the normal window for review has closed. This case causes us to ask: which board of zoning appeals' actions are void, and which are merely **voidable** and subject to the window closing?

Here, the Town of Grandview issued a special exception approval to a developer planning a large commercial solar project. Wike and seventy-eight others ("Landowners") who own or live in the area adjacent to the proposed project filed a lawsuit challenging the Town's awarding of the approval, which covered land in the two-mile fringe directly outside the Town's corporate limits. Although the Town could have provided for extraterritorial jurisdiction in its comprehensive plan and local ordinance, it failed to do so before issuing the special exception approval.

Landowners argue that that failure makes the special exception approval void. Meanwhile, the Town and the solar project argue that failure to follow statutory pre-requisites made the decision merely voidable, and Landowners waived their objection by failing to bring it within 30 days. We agree with the Town and project owners. In doing so, we take stock of our precedents surrounding *ultra vires* zoning board decisions and ultimately affirm the trial court.

## Facts and Procedural History

Grandview Solar Project, LLC sought to develop a large solar farm in Spencer County, Indiana. Part of the solar farm would be within the Town of Grandview, part within the Town's two-mile fringe, and part beyond the two-mile fringe in the County.[1]

Typically, a town can extend its zoning authority into the two-mile fringe by following certain requirements, including allowing for extraterritorial jurisdiction (ETJ) in its comprehensive plan. Ind. Code § 36-7-4-205(d)-(e). However, here the Town had a comprehensive plan establishing development objectives and land use guidelines; it only applies to "all territory located within the corporate limits of the Town." Joint Appellees' App. Vol. II. at 90. The Town's zoning ordinance has regulations "in accordance with [the] comprehensive master plan." *Id.* at 96. The ordinance defines jurisdiction as "the incorporated area of the Town of Grandview." *Id.* at 102.

Grandview Solar first approached the County for zoning approval in the ETJ, but following advice from the County, Grandview Solar went to the Town for approval.[2] The Town and the County confirmed the Town (1) had an ETJ and (2) was the right entity to decide zoning matters within the ETJ.[3] In November 2019, Grandview Solar applied to the Town Board of Zoning Authority for a special exception approval. After public

---

[1] Unless otherwise specified, "the Town" refers to any official representative, entity, or administrative body of the Town of Grandview, including the Board of Zoning Appeals. The County refers to any official representative, entity, or administrative body of Spencer County.

[2] The solar project was previously owned by a different entity, and it was that owner who approached the County. For simplicity, we refer to the owner of the solar project as Grandview Solar throughout these events.

[3] In November of 2019, one of Grandview Solar's attorneys followed up with Spencer County's Plan Commission Administrator: "As you may recall, we're working with the Town of Grandview regarding a BZA approval procedure (special exception) for a solar project within their 2-mile fringe boundary. However, do you know if your office would be responsible for any permitting [. . .] assuming the zoning approval is granted?" Joint Appellees' App. Vol. II at 76. And in response, the County said "Since it is in Grandview's buffer zone they would issue the Improvement Location Permits." *Id.*

hearing, the Town unanimously approved the special exception approval, which authorized construction of the solar farm within the two-mile fringe. At the public hearing, Grandview Solar had presented information on the impact of the solar project; including that its "solar energy would be used to help power the Town of Grandview, with Grandview netting approximately $1,000,000 in tax revenue over the life of the project." *Id.* at 34.[4] No one objected during the 30-day review period or for the next several years. Special exception approval in hand, the development moved forward.

In 2020, Grandview Solar applied to the County for a contingent use permit for parcels located within the County. After confirming this area was outside the Town's two-mile fringe (and therefore, Town authority) the County granted the permit. At that point, Grandview Solar had obtained its critical, discretionary zoning approvals. The only remaining zoning permits it needed were non-discretionary approvals such as building permits and improvement location permits.

In 2022, the solar farm development was acquired by a new owner who purchased it for millions of dollars. Prior to purchase, the attorney representing both the Town and the County confirmed the Town's ETJ authority and the validity of the two zoning approvals. Also in 2022, the Town and the County once again confirmed "Grandview Solar has all local zoning approvals that are required from the Town of Grandview and from Spencer County, and Grandview Solar is authorized to commence with the [improvement location permit], building permit or other construction-related permit application process." Appellants' App. Vol. II at 74. In the three years since the Town had issued the special exception approval, Grandview Solar says it spent approximately 30 million dollars developing the project.

---

[4] Extensive information was provided about the environmental impact of the solar project, including that, at the end of the "Project's useful life," the land would be restored to its current use and continue to function as agricultural, that the solar project would provide landowners with stable land payments, as well as a plan for soil preservation and rehabilitation. Joint Appellees' App. Vol. II at 36-39.

In June 2023, Grandview Solar applied to the Town for an improvement location permit so it could begin construction. But years after issuing the special exception, the Town refused to issue the improvement location permit, despite the Town's attorney advising them to do so because all objections to the special exception approval were long since waived. At this point, public opinion had turned against the development, and protestors were objecting to the Town issuing the improvement location permit, even though the Town had told Grandview Solar in 2019 that issuing the special exception approval "marks the end of the public participation process" and they were eligible to file for the "improvement location permits [ ], building permits, and other construction-related permits," which is an administrative process. Joint Appellees' App. Vol. II at 81. Because of the delay with the improvement location permit, Grandview Solar's agreement with its primary contractor was jeopardized, and it was at risk of missing contractual deadlines for its commercial and operational milestones for the solar farm.

Grandview Solar sued the Town, and the trial court granted a preliminary injunction requiring the Town to issue the improvement location permit. After the Town appealed, fourteen of the Landowners moved to intervene. The trial judge took a leave of absence, and the Town and Grandview Solar settled before a ruling on the motion to intervene. The injunction appeal was dismissed and the case was closed.

Landowners then initiated a new lawsuit. They filed a declaratory judgment complaint against Appellees, arguing, in relevant part, that the Town had no zoning jurisdiction over the ETJ, so the 2019 special exception approval and the contingent use permit were *void ab initio*.[5] They also argued the settlement agreement between the Town and Grandview Solar was void.

---

[5] Landowners sued Grandview Solar Project; Town of Grandview, Indiana Board of Zoning Appeals; Town of Grandview, Indiana Town Council; and Town of Grandview, Indiana Zoning Administrator. Again, we refer to Defendants/Appellees as the Town and Grandview Solar, respectively.

The trial court granted summary judgment to Appellees. The Court of Appeals reversed and remanded. It held the 2019 special exception approval was "ultra vires and void and subject to collateral attack at any time." *Wike v. Grandview Solar Project, LLC*, 253 N.E.3d 576, *4 (Ind. Ct. App. 2025) (mem).[6] It also held the settlement agreement between Grandview Solar and the Town was void because it was an attempt to ratify "void zoning decisions regarding the ETJ." *Id.*

The Town and Grandview Solar petitioned for transfer, which we now grant, vacating the Court of Appeals' opinion. *See* Indiana Appellate Rule 58(A).

## Discussion

Some of our appellate cases have said "[a]ny acts of the BZA that exceed the powers enumerated by the Indiana Code and the local zoning ordinance are *ultra vires* and void." *Schlehuser v. City of Seymour*, 674 N.E.2d 1009, 1014 (Ind. Ct. App. 1996) (citing *Anderson Lumber & Supply Co. v. Fletcher*, 89 N.E.2d 449, 452 (Ind. 1950); *Elkhart Cnty. Bd. of Zoning Appeals v. Earthmovers, Inc.*, 631 N.E.2d 927, 929 (Ind Ct. App. 1994), *trans. denied*).

We find the Town had the general authority to issue both a special exception under Indiana Code section 36-7-4-918.2 and to provide for jurisdiction in the ETJ under Indiana Code section 36-7-4-205, which establishes the conditions under which a municipal plan commission can exercise its planning authority over contiguous unincorporated areas (an ETJ). For plans adopted before July 1, 2019, a municipal plan commission can exercise ETJ authority by providing for it in its comprehensive plan.

---

[6] The Court of Appeals found the Town's ordinance and comprehensive plan didn't provide the Town with the authority to issue the special exception in the ETJ, but because there was an open question of whether the Town was providing municipal services in the ETJ (another avenue that would allow the Town to exercise authority there), summary judgment was inappropriate for either party and further fact-finding was required. *Wike*, 253 N.E.3d 576 at *5.

Here, the Town didn't do so, failing to provide for ETJ in its comprehensive plan or local ordinance. Today, we explore the legal effect of that failure. A review of our applicable case law reveals conflicting precedent regarding *ultra vires* acts. We distinguish and unweave that precedent before concluding that the 2019 special exception approval was voidable and the Landowners objections—raised years later in their declaratory judgment complaint—are waived.

As this case comes to us as a challenge to summary judgment which raises pure questions of law, we review de novo. *Ballard v. Lewis*, 8 N.E.3d 190, 193 (Ind. 2014) (citation omitted).

## I. The *Ultra Vires* Doctrine

In arguing the 2019 special exception approval is void, Landowners invoke the *ultra vires* doctrine. If we agreed with Landowners and declared the 2019 special exception void, the solar farm project would be dead in the water, even though Grandview Solar invested millions moving forward with a development for which it thought it received proper zoning approvals.

But first, we take a step back, and ask: just what is the *ultra vires* doctrine?

*Ultra vires* is Latin for "beyond the powers." *Ultra Vires*, *Black's Law Dictionary* (12th ed. 2024) at 1838. An *ultra vires* decision is **void**. A void decision is so wrong it can never be made right. It has "no legal effect at any time and cannot be confirmed or ratified by subsequent action or inaction." *Parkview Hosp., Inc. v. Am. Fam. Ins. Co.*, 151 N.E.3d 1218, 1228 (Ind. Ct. App. 2020) (quoting *Koonce v. Finney*, 68 N.E.3d 1086, 1090 (Ind. Ct. App. 2017) (citation omitted). Importantly, a void decision can be collaterally attacked, which means a party can try to invalidate a judgment by filing a new proceeding outside of a direct appeal (i.e. even long after the time for appeal has expired). *Id.* "A collateral attack is 'a judicial proceeding pursued to avoid, defeat, evade or deny the validity and effect of a valid judgment or decree.'" *Chapo v. Jefferson Cnty. Plan Comm'n*, 224 N.E.3d 971, 978 (Ind. Ct. App. 2023) (quoting *Earl v. State*

*Farm Mut. Auto. Ins.*, 91 N.E.3d 1066, 1071-72 (Ind. Ct. App. 2018) (citation omitted)).[7]

On the other hand, most legal decisions are **voidable**, meaning if a challenger thinks a decision was incorrect or defective on the merits, they *must* raise an objection during the applicable judicial review period. Should they miss their window to do so, the objection is forever waived and the decision is final.

The distinction between void and voidable is critical because our legal system (and in a real sense, our behavioral economy) depends on finality. At some point, administrative and legal decisions *must* become final. The time to address all legal and practical arguments for or against an action is during the lawsuit or proceeding, or shortly after—the judicial review window. After that window closes, the decision becomes final. The people and entities who depend on the validity of an order, or decree—or a zoning approval—must have confidence they can take actions based on the decision, and the decision won't be vulnerable to a lawsuit or be overturned decades later. For these reasons, the *ultra vires* doctrine **must** be narrowly cabined.

This case involves and is limited to the *ultra vires* doctrine as applied to an initial action by a BZA: the Town's decision to grant Grandview Solar its special exception approval in 2019.

BZAs derive their authority from a series of statutes under Title 36, Article 7, Chapter 4 of the Indiana Code. *Monroe Cnty. Bd. of Zoning Appeals v. Bedford Recycling, Inc.*, 269 N.E.3d 831, 838 (Ind. 2025). The 1600 series governs judicial review of zoning decisions and mandates that challenges to a special exception approval must be brought within 30 days. I.C. § 36-7-4-1605. *See also* I.C. § 36-7-4-1016 (final decisions of board

---

[7] *Void ab inito* is sometimes invoked by courts in trusts and estates. For instance, if a trust was illegally formed, that trust could and should be invalidated, even decades later. *See e.g., Deal v. Gittings*, 144 N.E.3d 716, 725 (Ind. Ct. App. 2020) (discussing long-standing rule that property transfers by a personal representative of an estate are void); *see also Rotert v. Stiles*, 174 N.E.3d 1067, 1073 (Ind. 2021) (revocable trust was found not void because probate code's bar against restraints on marriage did not apply to trusts).

of zoning appeals under 900 series are subject to judicial review within 1600 series); I.C. 36-7-4-918.2 (authority to grant special exceptions). Remember, decisions that are *ultra vires* and void are not subject to the 30-day appeal deadline set by the 1600 series—they can be collaterally attacked at any time. However, an incorrect but merely voidable decision must be challenged within 30 days or the objection is waived.[8]

Landowners argue the 2019 special exception is void because the Town had no authority to issue it under the local ordinance and comprehensive plan, which, as written, only provide for the Town to make zoning decisions within its corporate limits. Landowners' argument is not illegitimate. Our courts have said, "[i]t is well-settled in Indiana law that a zoning board may 'not act in excess of the power granted it under the statutes and zoning ordinances, and any acts in excess of these [are] *ultra vires* and void.'" *Earthmovers*, 631 N.E.2d at 929 (internal quotation

---

[8] Recently, in *Willow Haven,* we reiterated that nonparties to a permit application need not exhaust administrative remedies before bringing a nuisance action. *Willow Haven on 106th St., LLC v. Nagireddy*, 252 N.E.3d 418 (Ind. 2025). In this instance, *Willow Haven* is distinguishable and Landowners are subject to the 30-day judicial review window. "Only parties to a permitting action must exhaust before seeking review of the permitting action in court." *Id.* at 423. "'To hold otherwise,' we reasoned, 'would be to hold that every property owner in any particular district would be compelled to take notice of every action' whenever an administrative official or board enforces a local ordinance." *Id.* (quoting *Fidelity Trust Co. v. Downing*, 68 N.E.2d 789, 791 (Ind. 1946)). *Willow Haven* doesn't protect Landowners from the judicial review window (nor do Landowners argue it does). First, *Willow Haven* concerned a nuisance action. Here, Landowners have not brought a nuisance claim. Second, *Willow Haven* and its supporting cases are about building permits. That distinction matters. Permit decisions are not generally issued by BZAs. But more importantly, building permits do not generally initiate public notice, hearing, and comment requirements. If your neighbor applies for and is granted a building permit, you'd likely never know about it until they start construction. It doesn't make sense to hold non-applicants to the judicial review window, in part because nuisances often only present themselves after a building permit is approved and construction begins. Here, not only did Landowners not bring a proper nuisance action (and again, they don't argue they do), but the special exception approval Landowners attack was also not a building permit. Public notice was given, a hearing was held, extensive findings were made. (While the improvement location permit *was* a building permit, Landowners attack its validity only in relation to the special exception approval. That does not save their complaint, which is an improper collateral attack.)

omitted). This opinion explores Landowners' interpretation of this rule, which we find problematic and incorrect.

On the other hand, Grandview Solar and the Town argue the 2019 special exception is only voidable, and because Landowners didn't object within 30 days, their objections were waived years ago and this lawsuit is an improper collateral attack. So, Grandview Solar and the Town argue the trial court was right to dismiss Landowners' case.

Ultimately, we agree with Grandview Solar and the Towns' conclusion.

## II. Indiana's *Ultra Vires* Case Law

Each side relies on different cases in our history to support their position.

Grandview Solar and the Town argue that when the Court of Appeals determined the 2019 special exception could be collaterally attacked, it departed from its own precedent, as well as an opinion from this Court. They rely primarily on two Indiana Court of Appeals' opinions, *Georgetown Board of Zoning Appeals v. Keele*, 743 N.E.2d 301 (Ind. Ct. App. 2011), and *Elkhart County Board of Zoning Appeals v. Earthmovers, Inc.*, 631 N.E.2d 927, 929 (Ind. Ct. App. 1994), and one opinion from this Court, *Mischler v. County of Elkhart*, 544 N.E.2d 149 (Ind. 1989). Taken together, Grandview Solar and the Town argue these cases stand for the proposition that "it is only when there is no basis for which authority could be exercised could a Town's zoning actions be considered void." Town's Pet. to Trans. at 11.

Landowners argue that, in relying on *Keele*, Appellees ignore an "entire well-established doctrine in Indiana—that acts by a zoning board in excess of the powers granted under the statutes and zoning ordinance are ultra vires and *void*." Resp. to Town's Pet. to Trans. at 6 (emphasis in original). This rule comes from our Court in *Anderson Lumber*, 89 N.E.2d at 452, and was cited by the Court of Appeals in *Earthmovers*, 631 N.E.2d at 929, and *Schlehuser*, 674 N.E.2d at 1014.

We begin with *Anderson*, which birthed the rule language at the crux of this case's conflict.

## A. *Anderson Lumber*

In *Anderson*, a lumber company was enjoined from building on its property until the company received a variance from the local BZA. 89 N.E.2d 449. The lumber company had previously applied to the BZA for the variance, but the BZA dismissed the application. The BZA dismissed the application because it thought no variance was needed because "the use of the property in question constituted a nonconforming use." *Metro. Dev. Comm'n of Marion Cnty v. Hair*, 505 N.E.2d 116, 119-20 (Ind. Ct. App. 1987) (analyzing *Anderson Lumber*, 89 N.E.2d 449). The *Anderson* Court held: the BZA could grant or deny a variance, but it had "no authority to determine that a variance was not needed." *Id.* at 120. "Although the Board of Zoning Appeals had a right to determine its own jurisdiction, it could not act in excess of the power granted it under the statutes and zoning ordinance, and any acts in excess of these were *ultra vires* and void." *Anderson Lumber*, 89 N.E.2d at 452. So, "[t]he declaratory finding of the Board of Zoning Appeals in its order was void, since it had only jurisdiction to grant or deny a variance." *Id.*

First, while it's true the relevant local ordinance didn't authorize the BZA to dismiss a variance, and that's partly why the Court ruled the way it did, the problem facing *Anderson's* BZA was deeper than that. No Indiana statute gave the BZA the authority to dismiss a variance. "Neither the zoning ordinance nor the statute gave the board power to make binding determinations that a variance was not necessary." *Id.* Issuing an order dismissing the variance application (based on its belief it had no jurisdiction because of the property's existing non-conforming use) was simply not the kind of thing the BZA could do.

Landowners also rely on *Earthmovers*, where a BZA granted a special use permit to a couple who intended to lease their land to a company to operate a sanitary landfill. The BZA granted the permit with a catch, a condition the landfill only be used by Earthmovers, Inc., and its affiliated companies. 631 N.E.2d at 929. Earthmovers applied to modify the permit

to remove the condition because it regulated persons using the land rather than land use. The BZA denied the application. The *Earthmovers* court cited *Anderson's* broad rule that acts outside the power granted under the statutes and zoning ordinance are deemed void. *Id.* But then it analyzed out-of-state cases where challenged conditions "had no rational basis in the zoning board's authority or purposes" such as one where a condition for rezoning to a retail center was explicitly limited to the benefit of a single company or one where a special permit to operate a private tennis club terminated if the tennis club was sold. *Id.* at 931-32 (citations omitted).

Ultimately, the Court of Appeals held the defective condition was not void because it rationally related to the objectives of the statutes and zoning ordinance (reducing the amount of waste and pollution and making one entity accountable for the landfill's proper operation). *Id.* Beyond reciting *Anderson*'s rule language, we disagree that *Earthmovers* helps Landowners. First, Grandview Solar presented extensively on the impact the solar farm would have on the local economy and environment, so we think the special exception approval was rationally related to the Town's zoning objectives. And, like the facts in *Earthmovers*, the Town's actions in granting a special exception for land in the two-mile fringe are a far cry from invalid zoning actions like conditions restricting land ownership.

Also relevant is *Schlehuser v. City of Seymour*, which cites *Anderson* and *Earthmovers* for the broad rule that acts in excess of statutory power are void but doesn't conclude that the BZA's decision in question was void. 674 N.E.2d at 1014 (finding in part that the BZA had implied authority to revoke a variance, even though no statute or ordinance explicitly authorized it). *See also Robert Lynn Co. v. Town of Clarksville Bd. of Zoning Appeals*, 867 N.E.2d 660 (Ind. Ct. App. 2007) (BZA's revocation of a variance without notice or an opportunity to be heard was void); *Mies v. Steuben County Bd. of Zoning Appeals*, 970 N.E.2d 251 (Ind. 2012) (BZA decision was void because it imposed a condition in approving a developmental standards variance, and Indiana Code section 36-7-4-918.5 did not give the BZA the authority to impose any conditions on such a

variance); *Chapo*, 224 N.E.3d at 981 (BZA decision denying conditional use permit was not void).

*Schlehuser's* outcome tracks the general trend of a collateral attack determination turning on the question of whether the BZA had the general authority to do something. *Schlehuser* restated *Anderson's* rule as "[a]ny acts of the BZA that exceed the powers enumerated by the Indiana Code and the local zoning ordinance are *ultra vires* and void." *Schlehuser*, 674 N.E.2d at 1014. The conjunctive "and" is critical; authority derived from either set of rules suffices. For the narrow purposes of collateral attack, the BZA's action does not need to be consistent with *both* the powers enumerated by the Indiana Code and the local zoning ordinance.

We disagree with Landowner's interpretation of *Anderson*, which would capture any defect or violation of local zoning rules. *Anderson's* real rule is that a BZA act having no basis in Indiana zoning law is void. When a BZA takes an action that is contemplated by Indiana's enabling acts, its errors are voidable, not void.

## B. *Keele*

Grandview Solar and the Town rely on *Georgetown Bd. of Zoning Appeals v. Keele*, 743 N.E.2d 301 (Ind. Ct. App. 2001), which is notably the only relevant Indiana case about a challenge to a BZA's authority in the two-mile fringe.

In *Keele*, a town BZA issued a use variance to a developer for land in its ETJ. After the judicial review period closed, a remonstrator argued the use variance was invalid because the town didn't fulfill the specific statutory requirements necessary for the BZA to exercise ETJ authority, making the facts of *Keele* nearly "all fours" with the instant case. The relevant statutes required the municipal plan commission to file a description of the map or area with the county recorder before exercising ETJ. And even if the municipal plan commission already included ETJ in the county's comprehensive plan, jurisdiction still needed to be authorized by a separate county ordinance. *Id.* at 303-04.

*Keele* was "guided by" this Court's test at the time, distinguishing between subject matter jurisdiction and jurisdiction over the case, so to resolve its conflict the Court of Appeals looked to Indiana Code section 36-7-4-918.4, which "expressly gives a board of zoning appeals the power to grant a use variance generally." *Id.* at 304 (citing *Schlehuser*, 674 N.E.2d at 1014). Finding the BZA had general statutory authority to issue use variances, the court said the BZA had subject matter jurisdiction over the developer's petition. "In order for Keele to challenge the jurisdiction of the GBZA over [developer's] petition on the basis that the statutory requirements had not been met, Keele would have had to raise the objection initially with the GBZA." *Id.* at 305. Because Keele didn't do so, any objections he failed to raise initially were waived.

*Keele's* analysis has roots in *Board of Trustees of Town (Now City) of New Haven v. City of Fort Wayne*, a case partially about whether a county board of commissioners had jurisdiction over an annexation petition. 375 N.E.2d 1112 (Ind. 1978). There, we distinguished between subject matter jurisdiction and jurisdiction over the case. "A judgment of a court without jurisdiction of the particular case within the class is *not* a void judgment. Such jurisdiction can be waived and must be attacked by proper and timely objection." *Id.* at 1117 (emphasis added).

In *Mischler v. County of Elkhart*, this Court affirmed the same principles when it discussed jurisdiction at length in deciding a circuit court's order forcing county commissioners to approve a rezoning petition was voidable, not void. 544 N.E.2d 149 (Ind. 1989). "[I]f a tribunal possesses the power to determine cases of the general class to which the particular case belongs, it possesses subject matter jurisdiction to consider the particular case, absent specific and timely objections." *Id.* at 152 (quoting *New Haven*, 375 N.E.2d at 1117).

Here, Landowners argue *Keele* is irrelevant because the issues of *ultra vires* and subject matter jurisdiction are not the same thing and because they never argued the Town BZA "lacks subject matter jurisdiction to approve special exceptions," rather they argued the specific approval was void because it "exceeded the authority of the BZA." Resp. to Trans. at 8. We interpret Landowners' argument as a repetition of the parties'

continued disagreement on which test applies. Landowners say the *ultra vires* test is whether the Town exceeded its authority by approving a special exception on property outside its jurisdiction and the Town/Grandview Solar say the *ultra vires* test is whether the Town had subject matter jurisdiction over special exceptions (put otherwise, whether it had the general authority to issue special exceptions).

We start with Landowners' first complaint, that *Keele* is irrelevant. It isn't. Of the cases the parties discuss, *Keele* is most on point. In *Keele*, the remonstrator argued Georgetown's BZA did not meet the specific statutory requirements for it to exercise ETJ. So too, here. The Town exercised authority in its two-mile fringe without properly providing for ETJ authority in its comprehensive plan and local ordinance.[9] *Keele* is far from irrelevant and we are guided by its sensible outcome on the ETJ issue. Landowners argue *Keele* didn't decide an *ultra vires* zoning act, but we disagree. By finding the landowner waived his objection to ETJ by not bringing it within 30 days, the *Keele* court effectively prevented a collateral attack. That it didn't recite *ultra vires* as magic words does not change the impact of its decision.

As for its other argument against *Keele*, Landowners argue the question of subject matter jurisdiction is only relevant to the test for *ultra vires* court decisions, not a board of zoning appeals decision. But clearly, Indiana courts have used the question of subject matter jurisdiction (or now more correctly stated, asking whether an entity had the "general authority" to do something) to differentiate between void and voidable decisions from a variety of tribunals, including board of zoning appeals.

---

[9] Indeed, the Town's ordinance goes so far as to say "[a]ny permit issued in conflict with provisions of [Town's] ordinance shall be null and void." Joint Appellees' App. Vol. II at 110. This fact does not change our course. A finding of *void ab inito* is an extreme legal remedy. A municipality cannot in one breath ignore its own local regulations and then years later, point to the same local regulations to say what they did back then was null and void, and too bad for anyone who relied on it in good faith. Here, the determination of whether the special exception is *ultra vires* and void is for this Court to make and is not determined by this provision.

Still, there are issues with the *ultra vires* rule as Grandview Solar and the Town present it. Although *Keele* and its origin cases (*New Haven* and *Mishler*) have not been overturned, our Court has stopped talking about jurisdiction over the case. *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006) ("phrases recently common to Indiana practice, like 'jurisdiction over a particular case' confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations.").

We are guided by *Keele's* outcome preventing collateral attack on the town's ETJ authority, which we believe is correct. 743 N.E.2d at 305. However, we decline to resurrect a test using 'jurisdiction over the case.' Still, an identifiable and helpful pattern emerges from the cases discussed in Section II(B): Indiana courts have generally found that if a BZA or other entity has the general power to do something, an incorrect decision on the merits of a specific decision *doing that thing* is voidable, not void. This makes sense, because BZAs are administrative bodies deriving their authority from their enabling acts. *Bedford Recycling*, 269 N.E.3d at 831, 835 (reviewing BZAs' enabling statutes).

The principles, facts, and outcomes of *Keele*, *Mishler*, and *New Haven* are helpful guideposts. While not binding, *Keele's* facts are most like our present case, and it has a reasonable outcome worth considering. Further, we agree with the Town and Grandview Solar that *Mischler* and *New Haven* support the analysis in *Keele*. And applied here, these cases support Appellees' argument that because the Town had the authority to provide for ETJ (and to approve special exceptions), any objection to its failure to properly do so needed to be made within 30 days.

## III.   The 2019 Special Exception Approval was Voidable, and Landowners' Complaint is an Impermissible Collateral Attack

Here, we find the 2019 special exception was voidable, not void. First, enabling statutes authorized the Town to both issue special exceptions and provide for ETJ. The Town's zoning approval therefore had basis in

Indiana law, even though the Town failed to follow the statutory pre-requisites to exercise ETJ before issuing the special exception.

Specifically, Section 36-7-4-918.2 allows a BZA to approve or deny special exceptions "from the terms of the zoning ordinance, but only in the classes of cases or in the particular situations specified in the zoning ordinance." The enabling act also provides a path for a BZA to act outside of town limits by exercising ETJ. A municipal plan commission can adopt a comprehensive plan for ETJ in the two-mile fringe, or it can assume this authority by providing municipal services in the two-mile fringe. *See* I.C. § 36-7-4-205(d), (j). If the first path is taken, a zoning ordinance may be adopted that specifies the conditions under which the BZA can exercise zoning authority.

Here, there is no doubt that the Town failed to adopt a comprehensive plan and local ordinance authorizing ETJ. Landowners say this makes the special exception void. We disagree. The special exception was voidable. Its legality could have been challenged within the 30-day window and, because of these deficiencies, successfully so. But because the enabling acts contemplate a basis for zoning authority, both to issue special exceptions (Ind. Code § 36-7-4-918.2) and to provide for ETJ (Ind. Code § 36-7-4-205(d)-(e)), the BZA's grant of a special exception in the two-mile fringe was voidable, not void.

"There is a distinct difference between a judgment that the law does not authorize under any circumstances (a void judgment) and a judgment authorized by law but derived in violation of law (a voidable judgment)." *T.D. v. State*, 219 N.E.3d 719, 726-27 (Ind. 2023). *See* 46 Am. Jur. 2d *Judgments* § 15 (2023) ("The fact that a [trial] court acts in violation of a statute does not mean that the resulting judgment is void."). Here, the BZA issued the special exception in violation of the terms of the ordinance and comprehensive plan. Still, its failure to follow the enabling act requirements does not render its decision void under *Anderson*. Because the authority it exercised is contemplated by the enabling acts, it cannot be said that it exceeded its "powers enumerated by the Indiana Code and the local zoning ordinance" such that the special exception is *ultra vires* and void, even though its approval violated the terms of the ordinance.

*Schlehuser*, 674 N.E.2d at 1014. In *Anderson*, the BZA could have denied the variance or granted it, but instead it made a legal and factual determination that it was not necessary and dismissed the application, which it could not do. Nothing in the enabling act contemplated the BZA's power to dismiss a variance—under *any circumstances*. Here, the enabling acts contemplate the BZA's power both to issue special exceptions (from the terms of the ordinance) and to provide for ETJ (by providing for it locally, such as enacting a comprehensive plan). It failed to provide for this authority before acting upon it. But because our enabling acts contemplate this authority, under *Anderson*, this makes the Town's issuance of the 2019 special exception not outside of the power granted under the statutes.

We believe this is the correct reading of *Anderson* and one that is consistent with principles reflected in the outcomes of relevant appellate cases. *See ante* at 12-13 (*Schlehuser*, 674 N.E.2d at 1014; *Clarksville*, 867 N.E.2d at 673; *Mies*, 970 N.E.2d at 251; *Chapo*, 224 N.E.3d at 981).

The dissent posits that without a comprehensive plan and local zoning ordinance providing for jurisdiction outside its corporate limits, the Town's special exception approval was void as exceeding the power granted by the enabling acts and the local regulations. However, although the special exception did exceed the scope of the local zoning ordinance, *Anderson* doesn't turn on the local ordinance alone. Here, the question of whether the Town committed a void act doesn't depend on the ordinance but on the general authority provided by statute. *Anderson* requires the BZA to exceed its powers under both the local zoning ordinance and the Indiana Code. "Any acts of the BZA that exceed the powers enumerated by the Indiana Code and the local zoning ordinance are *ultra vires* and void." *Schlehuser*, 674 N.E.2d at 1014 (citing *Anderson*). And we disagree with the dissent that, in failing to follow the respective enabling requirements, the BZA exceeded its powers under the Indiana Code within the meaning of *Anderson*. Instead, for the narrow question of considering collateral attack, it is enough that the enabling acts contemplate the Town's authority to issue special exceptions and provide for ETJ.

But this decision is not a get out free card for BZAs. BZA decisions can still be challenged during the judicial review window, and through the public participation process, during which time a challenge can be raised that can change the outcome of events and hold the BZA to the terms of its local ordinance. Municipalities should know what their ordinances say. But here, in approving the special exception for land in its two-mile fringe, the Town did not do the sort of thing the *ultra vires* doctrine—an extreme remedy—is intended to capture.

## IV. The Motion to Intervene

Finally, we briefly address the doomed motion to intervene, filed by fourteen of these 79 landowners ("Intervenors"). First, because we find the 2019 special exception is voidable, we find no meritorious argument that the settlement agreement between the Town and Grandview Solar— resulting in the dismissal of the injunction appeal—is void. It is not, and we cannot find the trial court clearly violated any procedural rule in accepting the stipulation of dismissal before Intervenors were a party to the case.

If their motion was granted, Intervenors planned to argue the 2019 special exception was void, so the injunction for the improvement location permit shouldn't have been entered because it was based on a void zoning approval. Put otherwise, Intervenors believed the trial court's basis for granting the injunction (that the improvement location permit was a non-discretionary approval required after the Town granted the special exception) was a void approval.[10]

In our view, it can't be said Intervenors have been denied their day in court because their ultimate question is answered today, in Landowners' lawsuit. The trial court didn't err in relying on the 2019 special exception

---

[10] *See* Tr. at 22 (Landowners' attorney arguing the first trial court erred because it "[couldn't] rely on [the 2019 special exception] to grant the improvement location permit because that never should've been issued in the first place. We tried to make these arguments in front of that judge, but we didn't have a judge. There was no judge in that case available to us, so we're here today trying to get injunctive relief so we can in fact get that addressed.").

in granting the injunction. The 2019 special exception is not void. The settlement agreement is not void.

We also note the trial court was not alone in its view of things in granting the injunction—during the Town's deliberations about whether to issue the improvement location permit in the first place, the Town's own attorney advised the Town to issue it because no objections were raised before the deadline passed.

## Conclusion

Today we emphasize the importance of finality and good faith reliance on zoning decisions and clarify that a BZA decision can be collaterally attacked only where it is outside the authority derived from Indiana's enabling statutes and the applicable local ordinance. We affirm the trial court in its entirety.

Slaughter and Molter, JJ., concur.
Goff, J., dissents with separate opinion in which Rush, C.J., joins.

ATTORNEYS FOR APPELLANTS

Jason M. Kuchmay

Snyder Morgan & Kuchmay LLP

Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE GRANDVIEW SOLAR PROJECT LLC

Matthew D. Neumann

Margaret M. Christensen

Jessica L. Meek

Dentons Bingham Greenebaum LLP

Indianapolis, Indiana

ATTORNEYS FOR APPELLEES' TOWN OF GRANDVIEW, INDIANA
BOARD OF ZONING APPEALS, TOWN OF GRANDVIEW, INDIANA
TOWN COUNCIL, AND TOWN OF GRANDVIEW, INDIANA
ZONING ADMINISTRATOR

Deiona M. Camargo

Reminger Co., LPA

Evansville, Indiana

Katherine M. Haire

Reminger Co., LPA

Indianapolis, Indiana

**Goff, J., dissenting.**

The Grandview Solar Project, LLC (Grandview Solar) wishes to develop a solar project in Spencer County (County). Part of the project would be in the Town of Grandview, Indiana (Town), and part would fall in an area right outside the Town's incorporated border but still within the County. The Town's Board of Zoning Appeals (Town BZA) approved a "special exception" in an area outside its borders that would allow Grandview Solar to construct its solar project. Landowners living in the area adjacent to the proposed project sued Grandview Solar, the Town, the Town BZA, the Town council, and the zoning administrator (Defendants) for a declaratory judgment in a collateral action, arguing that the approvals were *void ab initio*. The trial court granted summary judgment for the Defendants, concluding that the Landowners should have sought judicial review when the Town BZA first approved the special exception.

The Court affirms, holding that the Town BZA's acts are merely voidable, because "the Town had the general authority" to issue special exceptions and to exercise jurisdiction outside its borders. *Ante,* at 7. I respectfully dissent. In my view, the Town BZA's approvals were void and subject to collateral attack because the enabling statute's requirements for extraterritorial jurisdiction were not met. The Town's comprehensive plan and zoning ordinance show that the Town BZA lacked jurisdiction beyond the Town's borders. Rather than a mere legal error the Town BZA could cure, the Town BZA lacked jurisdiction to render a decision outside its borders. For these reasons, I would reverse the trial court's entry of summary judgment.

## I. The Landowners can challenge the Town BZA's approvals in a collateral action because they were void.

I agree with the Landowners that they can challenge the Town BZA's approvals in a collateral action. To exercise extraterritorial jurisdiction (or ETJ), the Town BZA needed statutory authority. To exercise ETJ, Indiana

Code subsection 36-7-4-205(d) required the Town's municipal plan commission to authorize jurisdiction in its comprehensive plan, but it didn't. Nor did the Town's zoning ordinance allow the Town BZA to exercise jurisdiction beyond its borders. Rather than a legal error the Town BZA could cure, the Town BZA had no jurisdiction to render a decision in the first place. Therefore, the Town BZA's purported exercise of ETJ was void, and the approvals are subject to collateral attack.

## A. When an agency exercises jurisdiction beyond its enabling statutes, its actions are void.

Whether the Landowners can pursue a collateral attack depends on whether the zoning approvals were void or merely voidable. An action that is "void has no legal effect at any time and cannot be confirmed or ratified by subsequent action or inaction." *Parkview Hosp. Inc. v. Am. Fam. Ins. Co.*, 151 N.E.3d 1218, 1228 (Ind. Ct. App. 2020) (internal quotation marks and citation omitted), *trans. denied*. A "void action is subject to collateral attack at any time." *Chapo v. Jefferson Cnty. Plan Comm'n*, 224 N.E.3d 971, 978 (Ind. Ct. App. 2023) (internal quotation marks and citation omitted), *trans. denied*. "A collateral attack is a judicial proceeding pursued to avoid, defeat, evade, or deny the validity and effect of a valid judgment or decree." *Id.* (internal quotation marks and citation omitted). In contrast, a BZA action that is only *voidable* must be challenged by exhausting any administrative remedies and seeking judicial review within thirty days of the adverse zoning decision. Ind. Code §§ 36-7-4-1604 to -1605.

Administrative agencies, such as BZAs, are "statutory creatures" with "limited powers and jurisdiction" conferred by their enabling statutes. *Monroe Cnty. Bd. of Zoning Appeals v. Bedford Recycling, Inc.*, 269 N.E.3d 831, 835, 836 (Ind. 2025) (quoting 1 Ind. Law Encyc. Administrative Law and Procedures § 9 (2025)). "Any action by the BZA that exceeds those powers is ultra vires and void," and is subject to collateral attack. *Chapo*, 224 N.E.3d at 978. In *Anderson Lumber & Supply Co. v. Fletcher*, this Court held that a BZA had no statutory authority to make a declaratory judgment and only had the authority to grant or deny a variance. 89 N.E.2d 449, 452 (Ind. 1950). The declaratory finding in the BZA's order was therefore void. *Id.* In contrast, in

*Elkhart County Board of Zoning Appeals v. Earthmovers, Inc.*, the BZA had statutory authority to impose a condition on a special-use permit, so the condition was not subject to collateral attack. 631 N.E.2d 927, 929, 932 (Ind. Ct. App. 1994).

Because administrative agencies "can act only pursuant to the authority conferred on them by statute," they are "analogous to courts of limited jurisdiction." 1 Ill. Law and Prac. Administrative Law and Procedure § 4 (2026). When a court acts without jurisdiction, its actions are void. *See K.S. v. State*, 849 N.E.2d 538, 541 (Ind. 2006). For example, juvenile courts are courts of limited subject-matter jurisdiction, and their jurisdiction is defined by statute. In *J.B. v. State*, the juvenile court lost subject-matter jurisdiction under the relevant statutes once a defendant turned twenty-one years old. 252 N.E.3d 910, 914 (Ind. 2025). Because the juvenile court lacked subject-matter jurisdiction, it could not waive the defendant to adult court, and his conviction in adult court was void. *Id.* at 914, 917. Likewise, an agency's jurisdiction is defined by statute and when an administrative agency renders a decision without jurisdiction, the decision is void and subject to collateral attack. *See In re Complaint of Pilkington N. Am., Inc.*, 47 N.E.3d 786, 791 (Ohio 2015). Further, "a party cannot confer jurisdiction upon an administrative agency by consent or agreement." *Kranz v. Meyers Subdivision Prop. Owners Ass'n, Inc.*, 969 N.E.2d 1068, 1075 (Ind. Ct. App. 2012) (internal quotation marks and citation omitted), *trans. denied*.

However, when a court with jurisdiction makes an erroneous judgment, it is not void and cannot be attacked collaterally. *K.S.*, 849 N.E.2d at 541. In *K.S*, a juvenile argued that the juvenile court lacked jurisdiction because the juvenile court failed to approve the filing of the original delinquency petition. *Id.* at 542. This Court held the alleged error was merely procedural, not jurisdictional, and could not be challenged in a collateral attack. *Id.* Likewise, a wrong decision by an agency with jurisdiction is not void, only voidable. *Complaint of Pilkington*, 47 N.E.3d at 791. "That is, errors in the exercise of jurisdiction can be waived and must be challenged on appeal." *Id.* In other words, if an agency has jurisdiction but makes an error in its determination, the decision is merely voidable and must be challenged on direct appeal.

Therefore, to determine if the Landowners could pursue a collateral attack, we must determine whether the Town BZA lacked jurisdiction (making its approvals void) or merely made an error while exercising its jurisdiction (making its approvals voidable).

## B. Because the Town BZA did not have authority to exercise extraterritorial jurisdiction, its approvals were void.

Here, the Town BZA did not have the authority to exercise ETJ, rendering void its approvals outside its boundaries. A municipality can exercise jurisdiction beyond its borders if the municipal planning commission authorizes jurisdiction in its comprehensive plan and the municipality adopts a zoning ordinance giving its BZA jurisdiction. Because the Town's comprehensive plan and zoning ordinance did not allow this authority, the Town BZA's approvals were void.

Indiana Code subsection 36-7-4-205(d) provides that, "[t]o exercise territorial jurisdiction outside the corporate boundaries of the municipality, the municipal plan commission must provide in the comprehensive plan … for the development of the contiguous unincorporated area, designated by the commission." This area includes "any part of the contiguous unincorporated area within two (2) miles from the corporate boundaries of the municipality." I.C. § 36-7-4-205(e). Once a municipal plan commission approves a comprehensive plan covering the two-mile belt, the municipality may adopt a zoning ordinance to give the BZA authority in the area. I.C. § 36-7-4-601(a); I.C. §§ 36-7-4-602(a), (c). The BZA can then authorize special exceptions "from the terms of the zoning ordinance." I.C. § 36-7-4-918.2.

Here, the Town's comprehensive plan and ordinance show that the Town BZA lacked authority to issue special exceptions in the two-mile belt. First, the municipal plan commission approved a comprehensive plan that applies "to all territory located *within* the corporate limits of the Town," not beyond. Appellees' App. Vol. 2, p. 90 (emphasis added). Therefore, the Town could not adopt a zoning ordinance for the two-mile belt. Even if the Town could adopt a zoning ordinance for the two-mile belt, it didn't do so here. The

Town's zoning ordinance contains regulations "in accordance with a comprehensive master plan," and the ordinance defines "Jurisdiction" as "the *incorporated area* of the Town." *Id*. at 96, 102 (emphasis added). The ordinance also says, "Any permit issued in conflict with provisions of this ordinance shall be *null and void*." *Id.* at 110 (emphasis added). So, the zoning ordinance does not cover the two-mile belt either and approvals in the area are void. Finally, while the Town BZA does have authority to grant special exceptions, it only has authority to grant special exceptions "*from the terms of the zoning ordinance*," and the ordinance applies solely within the Town's borders. *See* I.C. § 36-7-4-918.2 (emphasis added); Appellees' App. Vol. 2, p. 188.

Because the Town's comprehensive plan and zoning ordinance only allow jurisdiction within the Town's corporate borders, and because an agency cannot exercise jurisdiction beyond its statutory authority, the Town BZA could not exercise ETJ here. Like the juvenile court in *J.B.* or the BZA in *Anderson*, the Town BZA lacked the statutory authority to make the zoning approvals, making its decision void.[1]

The Court acknowledges that the Town BZA's special exception violated the terms of the local zoning ordinance, but for purposes of collateral action, the "BZA's action [did] not need to be consistent with *both* the powers enumerated by the Indiana Code and the local zoning ordinance." *Ante*, at 14, 19. But the Town BZA's actions were not consistent with the powers enumerated by the Indiana Code either. Although Indiana Code subsection 36-7-4-205(d) allows jurisdiction beyond a municipality's borders, the statute still requires the municipal plan commission to authorize jurisdiction in its comprehensive plan. Only the municipal plan commission could authorize this, meaning the exercise of ETJ was not a mere legal error the Town BZA

---

[1] Another way a municipality may exercise extraterritorial jurisdiction in the two-mile belt, besides authorizing it in the comprehensive plan, is by providing municipal services in the area and filing notice with the county recorder and county legislative body. Ind. Code § 36-7-4-205(j). Even if the Town provided municipal services in the area at issue and filed the required notice, the approvals were still void because the Town never passed a zoning ordinance giving the Town BZA jurisdiction outside the Town's corporate boundaries.

could cure. This is not a case where the BZA had jurisdiction but made an incorrect decision or a procedural error during the exercise of its jurisdiction. Rather, the Town BZA here had no authority under its enabling statutes to exercise jurisdiction in the first place. Therefore, I would hold that the Town BZA's approvals were void.

The Court also looks to *Georgetown Board of Zoning Appeals v. Keele* to conclude that when a BZA exercises ETJ without statutory authority, its decision is merely voidable. *Ante*, at 17 (citing 743 N.E.2d 301 (Ind. Ct. App. 2001)). Although *Keele* is factually on point to this case, it was wrongly decided by the Court of Appeals, and this Court is not bound by it. In *Keele*, a BZA issued a variance for land in its purported ETJ. 743 N.E.2d at 302. A remonstrator initiated a collateral attack, arguing the variance was void because the town did not meet statutory requirements to exercise ETJ. *Id.* The *Keele* panel concluded that the BZA had statutory authority to issue variances generally, so there was jurisdiction. *Id.* at 304. The panel then concluded that the neighbor had to challenge any error about "jurisdiction over the case" in the BZA proceedings and could not pursue a collateral attack. *Id.* at 305. But our Court has disavowed phrases like "jurisdiction over a particular case" because it "confuse[s] actual jurisdiction with legal error." *K.S.*, 849 N.E.2d at 540. While the BZA in *Keele* had authority to issue variances generally, it did not have jurisdiction to do so outside its city limits. By using concepts like "jurisdiction over the case," the *Keele* court confused jurisdiction with legal error, the exact reason why the phrase was disavowed by this Court in *K.S.*

I also question whether Grandview Solar's project is "dead in the water." *Ante*, at 8. If the Town BZA does not have the authority to make the zoning approvals, the land falls under the County's jurisdiction, and perhaps the County can make the zoning approvals instead. Grandview Solar might also have other remedies such as suing the Town for the money lost or only continuing the project within the Town's borders. And while concerns about finality are valid, the Court's holding allows one local BZA to make a decision affecting the territorial jurisdiction of another BZA, giving the residents in the second BZA's jurisdiction just thirty days to find out about the first BZA's surprise decision and

challenge it in court. Arguably, allowing a BZA to make decisions outside its boundaries without the proper statutory authority is egregious to public policy as well.

## Conclusion

Like the *Keele* court, the Court today confuses jurisdiction and legal error. The Town BZA did not make a legal error when making its decision; rather, it had no jurisdiction to render a decision in the first place. Just a few months ago, we stressed that agencies are statutory creatures with powers limited by their enabling statutes, *Bedford Recycling*, 269 N.E.3d at 835, 836, and the Town BZA here acted beyond its statutory authority. I respectfully dissent.

Rush, C.J., joins.